Affirmed by published opinion. Judge MOTZ wrote the majority opinion, in which Senior Judge HILTON joined. Judge GREGORY wrote a separate opinion concurring in the judgment.
OPINION
DIANA GRIBBON MOTZ, Circuit Judge:
Charged with possessing and uttering a forged security, committing identity fraud, and possessing stolen mail, Ulysses Ray Evans pled guilty to identity fraud pursuant to a plea agreement in which he reserved his right to appeal a sentence in excess of the advisory Guidelines range. The district court sentenced him to 125 months’ imprisonment, a more than 300 percent deviation from the Guidelines range of twenty-four to thirty months.[1] Evans appeals, maintaining that his sentence is unreasonable. We placed the case in abeyance awaiting the Supreme Court decision in Gall v. United States, — U.S. —, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). That opinion now has issued, and we affirm.
I.
In 2004, Evans purchased personal information about Wachovia Bank account holders Robert Reed and Paul Richards. Using this information, Evans ordered and received boxes of checks for accounts held by Reed and Richards. Over the next several months, Evans negotiated many fraudulent checks on Reed’s and Richards’ accounts. This identity theft caused substantial financial losses to a number of businesses, as well as significant financial hardship and emotional suffering for the victims.
On October 17, 2004, Reed contacted the local police department in Winterville, North Carolina, to report that someone had fraudulently written numerous checks, totaling $4,774.80, on his account to various local businesses. After investigation, police officers discovered that Evans had negotiated the stolen checks on the Reed account and had in fact written fifty-four checks on that account between October 9 and October 19, 2004. Police contacted *159 Evans and arranged for him to surrender himself — but Evans then failed to do so.
On November 30, 2004, a Wachovia fraud investigator notified postal inspectors that Richards’ account had been compromised. A person later identified as Evans impersonated Richards, changed the account’s address to a residence in Charlotte, North Carolina, and ordered a box of checks delivered to the new address. Between November 17, 2004, and December 22, 2004, Evans negotiated sixty-four checks on the Richards account. Police arrested Evans at the Charlotte address on December 2, 2004.
When postal inspectors later interviewed Evans, he admitted to purchasing personal information about Reed and Richards from a childhood friend employed by Wachovia Bank. He also told the inspectors that he wrote fake driver’s license numbers and social security numbers on the checks, and that he had false identification cards made in Reed’s and Richards’ names.
Evans’ fraudulent negotiation of these checks caused an aggregate loss of $13,634.89 to businesses in North Carolina, South Carolina, and Virginia. He used seven social security numbers (six belonging to actual persons) and ten driver’s license numbers (all belonging to actual persons) to negotiate the checks.
Furthermore, Evans told authorities that between June 2004 and his arrest in September 2005, he bought approximately ten to twenty false identification cards in order to perpetrate additional identity theft crimes using the personal information of new potential victims that he had obtained. Evans successfully committed identity theft with at least one new victim’s information.
Following his arrest and indictment for these crimes, Evans agreed to plead guilty to identity theft. In his plea agreement, Evans recognized that the court might sentence him to imprisonment for a term of up to fifteen years (or 180 months) without parole.
The probation department prepared a Prehearing Sentence Report (PSR), which described Evans’ crimes and the severe repercussions for his victims. The PSR related that Richards and his wife informed a probation officer that they had lost their faith in “the system” and felt violated because Evans had compromised their personal information. They believed that his actions had damaged their reputations and worried that they could not write checks for fear that stores would not accept those checks. The Richardses viewed the crimes as a “nightmare,” and the probation officer observed that “[t]he Richards are still suffering the long lasting effects of their information being stolen and used in an illegal fashion.”
Robert Reed and his wife similarly told the probation officer they had spent substantial time, as well as money, to rectify the harm Evans had caused them. They said they had communicated with eight different police departments regarding the checks that Evans forged. The Reeds explained that Evans’ crime had permanently affected them and they feared for their safety and worried about who else might have their personal information. The Reeds also related that they had been threatened with a civil lawsuit, arrest, and prosecution because of Evans’ actions.[2]
The PSR also set forth Evans’ extensive criminal history. It listed forty-five prior convictions, most of which involved false *160 pretenses, use of fraudulent checks, forgery, or other fraud. In regard to his most recent prior offense, the PSR noted that Evans had been convicted in federal court for various fraud charges arising from his use of individuals’ credit reports to obtain credit cards and withdraw money in their names. Further, Evans also had been convicted of an additional eighteen nonscoreable offenses and had violated probation fifteen times.
The PSR calculated the appropriate advisory Guidelines range using the 2005 edition of the U.S. Sentencing Commission Guidelines Manual (U.S.S.G.). Under U.S.S.G. § 2B1.1, Evans’ crimes warranted an initial offense level of twelve, beginning with a base offense level of six, adding four levels due to the amount of money involved, and adding another two levels due to the number of victims affected. See U.S.S.G. § 2B1.1(a)(2), (b)(1)(C), (b)(2)(A). The PSR recommended a reduction of two levels, because Evans accepted responsibility for his actions. See U.S.S.G. § 3E1.1(a). Thus, Evans received a final total offense level of ten. That level, coupled with a criminal history category of VI, led to an advisory Guidelines range of twenty-four to thirty months. The Government then moved, pursuant to U.S.S.G. § 5K1.1, for a downward departure from the Guidelines range based on Evans’ assistance in prosecuting the bank employee who sold Evans the victims’ personal information.
The district court notified the parties that it contemplated an upward deviation from the advisory Guidelines range because the court believed the range underrepresented Evans’ “substantial criminal history” and “understate[d] the seriousness” of Evans’ offenses. The court then held a thorough sentencing hearing at which it carefully considered the arguments of both sides. At the conclusion of the hearing, the court explained at length its grounds for rejecting the Government’s motion for a downward departure and instead deviating upward from the Guidelines range to sentence Evans to 125 months’ imprisonment. The court also issued a fifteen-page written opinion detailing its reasons for concluding that this sentence presented no conflict with the Guidelines and best furthered the factors set forth in 18 U.S.C. § 3553(a) (2000). Evans noted a timely appeal, principally contending that the Guidelines themselves do not permit the district court to impose this sentence, and so we must find it unreasonable.
II.
Gall and its companion case, Kimbrough v. United States, — U.S. —, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), and Rita v. United States, — U.S. —, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007), supply the precedent governing Evans’ challenges to his sentence. These cases unequivocally establish that: (1) the advisory Sentencing Guidelines, although important, simply do not have the preeminent and dominant role that Evans claims for them, and (2) an appellate court must defer to the trial court and can reverse a sentence only if it is unreasonable, even if the sentence would not have been the choice of the appellate court.
A.
With respect to the first principle — the role of the Guidelines in sentencing determinations — of course, a district court must begin “by correctly calculating the applicable Guidelines range.” Gall, 128 S.Ct. at 596. Thus, “[t]he sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines.” Rita, 127 S.Ct. at 2465. But even *161 though the Guidelines are “the starting point and the initial benchmark,” they “are not the only consideration.” Gall, 128 S.Ct. at 596.
Indeed, a district court may not even “presume that the Guidelines range is reasonable.” Id. at 596-97; see also Rita, 127 S.Ct. at 2465. Instead, the district court must “giv[e] both parties an opportunity to argue for whatever sentence they deem appropriate” and “then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.” Gall, 128 S.Ct. at 596 (emphasis added); see also Kimbrough, 128 S.Ct. at 564 (reiterating that the “Guidelines range” is just one of “the array of factors warranting consideration” by the sentencing judge). In each case, the court “must make an individualized assessment based on the facts presented.” Gall, 128 S.Ct. at 597. A district court may reject a sentence within the advisory Guidelines range because “the case at hand falls outside the ‘heartland’ ” to which the individual Guidelines apply or because a sentence within the Guidelines fails to reflect the other § 3553(a) factors or “because the case warrants a different sentence regardless.” Rita, 127 S.Ct. at 2465.
If the district court decides to impose a sentence outside the Guidelines range, it must ensure that its justification supports the “degree of the variance”; thus, “a major departure should be supported by a more significant justification than a minor one.” Gall, 128 S.Ct. at 597. But a district court need not justify a sentence outside the Guidelines range with a finding of “extraordinary” circumstances. Id. at 595, 602 (upholding a sentence of thirty-six months’ probation, a 100 percent downward deviation from the Guidelines range of thirty to thirty-seven months’ imprisonment). And in fact, as the Solicitor General conceded in Kimbrough, a sentencing judge may “vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines.” 128 S.Ct. at 570, 576 (internal quotation marks and alterations omitted) (upholding a sentence of 180 months’ imprisonment, a 21 percent downward deviation from the Guidelines range of 228 to 270 months).
B.
With respect to the second principle — the role of a reviewing court— Gall, Kimbrough, and Rita are just as clear. An appellate court reviews a sentence only “under a deferential abuse-of-discretion standard,” regardless of whether the sentence imposed is “inside, just outside, or significantly outside the Guidelines range.” Gall, 128 S.Ct. at 591. Initial review is for “significant procedural error,” ensuring that the district court has not, for example,
fail[ed] to calculate (or improperly calculated] ) the Guidelines range, treatfed] the Guidelines as mandatory, fail[ed] to consider the § 3553(a) factors, selected] a sentence based on clearly erroneous facts, or fail[ed] to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range.
Id. at 597. Then an appellate court “consider[s] the substantive reasonableness of the sentence imposed.” Id. At this stage of review, the court will
take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness. But if the sentence is outside the Guidelines range, the court *162 may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court’s decision that the § 3553(a) factors, on a whole, justify the extent of the variance.
Id. (emphasis added) (citation omitted).
Gall explicitly cautions that “[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.” Id. “[I]t is not for the Court of Appeals to decide de novo whether the justification for a variance is sufficient or the sentence reasonable.” Id. at 602. Rather, “the Court of Appeals should [give] due deference to the District Court’s reasoned and reasonable decision that the § 3553(a) factors, on the whole, justiffy] the sentence.” Id. Deference is required because “[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case.” Id. at 597 (quoting Br. for Fed. Pub. & Cmty. Defenders et al. as Amici Curiae at 16). “Moreover, ‘[district courts have an institutional advantage over appellate courts in making these sorts of determinations ... as they see so many more Guidelines sentences than appellate courts do.’ ” Id. at 598 (quoting Koon v. United States, 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)).
Kimbrough again emphasizes the need for an appellate court to defer to the district court’s assessment of whether a within-Guidelines sentence would adequately serve sentencing objectives and whether attempts to achieve uniformity across defendants convicted of similar crimes would work an injustice in a particular case. 128 S.Ct. at 574-75 (noting that “some departures from uniformity were a necessary cost of the remedy” adopted in Booker). Thus, the Kimbrough Court held that, “[g]iving due respect to the District Court’s reasoned appraisal” of both the “particular circumstances of [the defendant’s] case” and the views of the Sentencing Commission, “a reviewing court could not rationally conclude” that the sentence awarded “qualified as an abuse of discretion,” even though it was well outside the prescribed Guidelines range and relied heavily on a single sentencing factor. Id. at 576.
With these governing principles in mind, we turn to the case at hand.
III.
We first review Evans’ sentence for reasonableness, as Gall, Kimbrough, and Rita require. We then consider Evans’ two specific challenges to the sentence.
A.
As Gall instructs, we initially review for “significant procedural error.” 128 S.Ct. at 597. In arriving at the sentence it selected, the district court expressly adopted the presentence report, which properly calculated the advisory Guidelines range. The court did not treat the Guidelines as mandatory; rather it gave the parties an opportunity to argue for whatever sentence they deemed appropriate, and it considered all of the § 3553(a) factors. It then imposed a sentence based on facts not challenged by Evans and provided an explanation for its deviation from the Guidelines range.
Because the court properly engaged in each of these analytical steps and thoroughly explained its reasoning supporting the sentence, we find no evidence of procedural error, let alone “significant procedural error.” See id. Accordingly, we are left to review only for “substantive reasonableness” and to assess “whether the District Judge abused his discretion in *163 determining that the § 3553(a) factors supported [the] sentence ... and justified [the] substantial deviation from the Guidelines range.” Id. at 597, 600.
In determining what sentence to impose, the district court carefully considered the PSR, the Reeds’ victim impact letter, and Mrs. Reed’s testimony. The PSR detailed the vast extent of Evans’ prior criminal activity and his victims’ account of the substantial harm he caused them. Evans offered no contrary evidence. The district court found the PSR credible and specifically adopted its findings.
The district court then found that Evans had “repeatedly perpetrated fraud and theft crimes” but, prior to 2002, had served relatively little time in jail despite “his repeated criminal conduct.” The record provides ample support for this finding — in fact, in the eleven years between 1991 and 2001, Evans was convicted of forty-three crimes, most of which involved fraud, but he received only sentences of probation or imprisonment for less than a year for nearly all of these offenses.
The court further found that even when Evans was convicted in 2002 in the Western District of North Carolina for various federal frauds and sentenced to forty-six months’ imprisonment and three years of supervised release, this more serious penalty did not deter him from engaging in additional fraud while on supervised release. The court noted that “Evans still owes $236,439.68 in restitution” for the crimes committed in the Western District, although he had secured possession of “a Mercedes and Lexus following his release from prison” for those crimes.
The court concluded that Evans had “displayed manifest contempt for the legal system, the law, and his victims.” It observed that, “[t]ime after time, Evans has committed economic crimes, received short sentences, and failed to comply with conditions of probation or supervised release.” The court noted that as “technology has advanced, Evans’ schemes have advanced from forging checks to obtaining credit card information and perpetuating more far-reaching and sophisticated fraud.”
On the basis of these facts, the district court determined that a sentence of 125 months’ imprisonment served the factors set forth in § 3553(a). The court explained that, in its view, Evans simply would not be deterred from continued criminal conduct “absent a lengthy sentence.” Thus, it concluded that a 125-month sentence was necessary in order to “promote! ] respect for the law, provide[ ] just punishment for the offense, afford! ] adequate deterrence to criminal conduct (both as to Evans personally and others like him), and protect!] the public from further crimes of the defendant.” In 18 U.S.C. § 3553(a), Congress has mandated that a sentencing court consider these precise factors and choose a sentence that “reflects] the seriousness of the offense,” “promote[s] respect for the law,” “provide[s] just punishment for the offense,” “affordfs] adequate deterrence to criminal conduct,” and “proteet[s] the public from further crimes of the defendant.” Although the deviation from the Guidelines range in this case clearly is significant, the district court provided “significant justification” for the degree of the deviation, which is all that is required. See Gall, 128 S.Ct. at 597.
The district court carefully and thoroughly applied the prescribed sentencing factors to the facts of the case, and it “adequately explained] the chosen sentence.” See id. The court’s approach both “promote[s] the perception of fair sentencing” and allows us to engage in “meaningful appellate review.” See id. *164 Therefore, given the requisite deference we must accord to the considered judgment of the district court, we can only conclude that the chosen sentence is reasonable even though it does represent a significant upward deviation from the Guidelines range. See id.
B.
Nevertheless, Evans challenges the reasonableness of his sentence on two grounds. Gall, Kimbrough, and Rita foreclose both challenges.
1.
First, and chiefly, Evans contends that the Guidelines themselves do not allow the district court to impose his sentence. In addition to relying on § 3553(a) factors, as outlined above, the district court also believed that U.S.S.G. §§ 2B1.1, cmt. n. 19(A), and 4A1.3, p.s., justified its substantial upward deviation from the advisory Guidelines range.[3] Evans strenuously argues that neither of these Guidelines provisions permits an upward deviation here, and therefore we must find the sentence unreasonable. The fundamental flaw with this argument is that, even if Evans is correct and the Guidelines themselves do not sanction the deviation here, the sentence remains reasonable because it properly reflects the § 3553(a) considerations.
Of course, when sentencing, the district court must begin by correctly calculating the applicable Guidelines range. Gall, 128 S.Ct. at 596. Failure to do so would be a significant procedural error. Id. at 597 But in the present case, the district court correctly calculated the Guidelines range as required, and Evans does not argue to the contrary.
As the Supreme Court explained in Rita, after completing the process of determining the appropriate Guidelines range, the district court then considers whether a “Guidelines sentence should not apply.” 127 S.Ct. at 2465. Rita expressly recognizes that a district court may conclude that a Guidelines sentence “should not apply” because “the case at hand falls outside the ‘heartland’ to which the Commission intends individual Guidelines to apply [citing Guidelines departure provision]” or “because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations” or “because the case warrants a different sentence regardless.” Id.
Gall and Rita thus firmly establish that although adherence to the advisory Guidelines departure provisions provides one way for a district court to fashion a reasonable sentence outside the Guidelines range, it is not the only way. Rather, after calculating the correct Guidelines range, if the district court determines that a sentence outside that range is appropriate, it may base its sentence on the Guidelines departure provisions or on other factors so long as it provides adequate justification for the deviation.
When reviewing the sentence selected by the district court, regardless of whether the court deviates from the advisory Guidelines range because of a Guidelines-sanctioned departure, or because of one or more § 3553(a) factors, or because of some other reason — that is, no matter what provides the basis for a deviation from the Guidelines range' — -we review the resulting sentence only for reasonableness. See *165 Gall, 128 S.Ct. at 597; Rita, 127 S.Ct. at 2465.
Furthermore, we must look to “the totality of the circumstances” to determine whether the ultimate sentence is reasonable. Gall, 128 S.Ct. at 597. When, as here, a district court offers two or more independent rationales for its deviation, an appellate court cannot hold the sentence unreasonable if the appellate court finds fault with just one of these rationales. Picking through the district court’s analysis in that manner would be wholly inconsistent with the Supreme Court’s directives to examine the “totality of the circumstances,” id., and to defer to the considered judgment of the district court. See id. at 597-98, 602; Kimbrough, 128 S.Ct. at 576; Rita, 127 S.Ct. at 2465, 2469; see also United States v. Martin, 455 F.3d 1227, 1237 (11th Cir.2006) (explaining that the appellate court does not review each decision made by the sentencing court for reasonableness, but rather considers only the final sentence, in its entirety, for reasonableness).
In this case, the district court found that both the Guideline departure provisions and the § 3553(a) factors supported its sentence of 125 months. Although Evans challenges — at length — the court’s analysis of the Guidelines departure provisions, he offers no argument that application of the § 3553(a) factors does not justify his sentence. As explained above, the record provides abundant support for the district court’s conclusion that the § 3553(a) factors support the sentence. Accordingly, even assuming the district court erred in applying the Guideline departure provisions, Evans’ sentence, which is well-justified by § 3553(a) factors, is reasonable.[4]
2.
Evans’ sole remaining argument focuses on the extent of the upward deviation from the advisory Guidelines range. Relying on some of our pr e-Rita and pr e-Gall precedent, e.g., United States v. Moreland, 437 F.3d 424 (4th Cir.2006), and United States v. Khan, 461 F.3d 477 (4th Cir.2006), Evans contends that his sentence must be reversed because it is not supported by the “exceptionally compelling” reasons necessary to sustain this very significant deviation from the Guidelines range. Whatever support these cases may have once provided for this argument, Gall undermines it, if not rendering it wholly meritless.
In Gall, after acknowledging the relevance of the difference between the imposed sentence and the recommended Guidelines range, the Court explicitly rejected “an appellate rule that requires ‘extraordinary’ circumstances to justify a sen *166 tence outside the Guidelines range.” 128 S.Ct. at 595. Such an approach, the Court explained, would “reflect a practice ... of applying a heightened standard of review to sentences outside the Guidelines range,” which it found “inconsistent with the rule that the abuse-of-discretion standard of review applies to appellate review of all sentencing decisions — whether inside or outside the Guidelines range.” Id. at 596.
To be sure, requiring “compelling” justifications for a deviation sentence may reflect a standard different than the “extraordinary circumstances” test imposed by the Eighth Circuit and invalidated in Gall. Yet, as the Gall Court observed, applying a uniform, heightened standard of review for all variances sentences “come[s] too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range,” an approach the Court previously had rejected in Rita. See id. at 595 (citing Rita, 127 S.Ct. at 2467). Therefore, if a district court “decides that an outside-Guidelines sentence is warranted,” it need only “ensure that the justification is sufficiently compelling to support the degree of the variance.” Id. at 597 (emphasis added).
On review, we may still “consider the extent of the deviation, but [we] must give due deference to the district court’s decision that the § 3553(a) factors, on a whole, justify the extent of the variance.” Id. Gall reinforces the wisdom that appellate courts must not lightly disturb the judgment of district judges, given their on-the-scene, “superior position.” Id. Accordingly, we must review all sentences, even those “significantly outside the Guidelines range ... under a deferential abuse-of-discretion standard.” Id. at 591. Thus, Gall prohibits us from doing what Evans requests; we cannot disregard the considered reasoning of the district court and require “exceptionally compelling” justification for a sentence significantly outside the Guidelines range.[5]
C.
In sum, the sentence selected by the district court is reasonable, and we find Evans’ arguments to the contrary unavailing. The district court recognized that the Guidelines served as “the starting point and the initial benchmark” for sentencing determinations. See id. at 596. It then carefully considered the § 3553(a) factors and fashioned a sentence “sufficient, but not greater than necessary, to comply with the [federal sentencing] purposes,” see 18 U.S.C. § 3553(a), and it provided ample reasons why “the § 3553(a) factors, on the whole, justified the sentence,” see Gall, 128 S.Ct. at 602. Therefore, since we find neither “significant procedural error” nor evidence of any “substantive [unreasonableness,” see id. at 597, we hold that the district court did not abuse its discretion in sentencing Evans. We recognize that the sentence imposed on Evans may not be the only reasonable sentence, but it is a reasonable sentence, and the Supreme Court has directed that any reasonable sentence be upheld.
IV.
For the foregoing reasons, the judgment of the district court is

AFFIRMED.

. Evans contends that his sentence is 416 percent above the high end of the Guidelines range; however, his 125-month sentence is 416 percent of but only 316 percent greater than a thirty month term of imprisonment.

. The Reeds additionally submitted a victim-impact letter to the district court, and Mrs. Reed testified at Evans’ sentencing hearing.

. Section 2B1.1, comment n. 19(A) provides that an upward departure may be warranted when the Guidelines range "substantially understates the seriousness of the offense.” Section 4A1.3(a)(1), p.s., allows for an upward departure if the court believes that the criminal history category "substantially under-represents the seriousness of the defendant's criminal history.”

. This is not to say that an error in applying the departure provisions of the advisory Guidelines is irrelevant to our review. When the district court imposes a non-Guidelines sentence based on a correct application of the Guideline departure provisions, the resulting sentence reflects the judgment of both the district court and the Commission that a non-Guidelines sentence is appropriate. See Rita, 127 S.Ct. at 2465. Particularly in cases in which the district court has imposed a sentence substantially outside the Guidelines range, the Commission’s judgment will certainly provide one compelling justification for the departure. See Kimbrough, 128 S.Ct. at 575-76. Conversely, when a non-Guidelines sentence runs directly counter to the Commission’s position, either because the district court has erroneously applied the departure provisions or because it has determined in a “mine-run case’’ that the Guidelines range fails to reflect the § 3553(a) factors, “closer review may be in order.” Id. at 574-75. But the Commission's position as to when a sentence outside the Guidelines range is appropriate is only one of the factors we consider to "ensure that the [district court's] justification is sufficiently compelling,” and, regardless of whether the district court has agreed or disagreed with the Commission, we may only review the reasonableness of the sentence imposed. Gall, 128 S.Ct. at 597.

. Gall similarly forecloses Evans' heavy reliance on the fact that the 125-month sentence that the district court imposed is over 300 percent above the high end of the advisory Guidelines range. For the Court in Gall expressly rejected both a "rule requiring 'proportional' justifications for departures from the Guidelines range,” 128 S.Ct. at 594, and "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence,” id. at 595.