**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 11-4556**

─────────────

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

VINCENT ELOYD HILL,

            Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.    Terrence W. Boyle,
District Judge.  (7:10-cr-00053-BO-1)

─────────────

Argued:  May 18, 2012                Decided:  July 17, 2012

─────────────

Before KEENAN, WYNN, and FLOYD, Circuit Judges.

─────────────

Affirmed by unpublished opinion.  Judge Wynn wrote the opinion,
in which Judge Keenan and Judge Floyd concurred.

─────────────

**ARGUED:** John Keating Wiles, CHESHIRE, PARKER, SCHNEIDER, BRYAN &
VITALE, Raleigh, North Carolina, for Appellant.   Yvonne Victoria
Watford-McKinney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh,
North Carolina, for Appellee.   **ON BRIEF:** Thomas G. Walker,
United States Attorney, Jennifer P. May-Parker, Assistant United
States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh,
North Carolina, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Vincent Eloyd Hill appeals his jury conviction of conspiracy to possess heroin and marijuana with the intent to distribute, possession of a firearm in furtherance of a drug trafficking crime, possession of a firearm as a convicted felon, and aiding and abetting the possession of heroin and marijuana with intent to distribute; and his sentence of 240 months, a 60-month upward deviation from the advisory Guidelines range. Hill argues on appeal that the district court (1) erred by denying his motion to suppress evidence seized from a traffic stop; (2) abused its discretion by denying a motion to withdraw filed by his court-appointed counsel; and (3) unreasonably imposed a 60-month upward variance on his sentence. We find no error and therefore affirm the conviction and sentence.

I.

A.

While driving on Route 74/76 toward Leland, North Carolina on March 17, 2009, Officer William Kozak of the Leland Police Department observed a green Chevrolet Tahoe repeatedly drift out of its lane. Pulling alongside the vehicle, Officer Kozak noticed that the driver was sitting very low in the seat and appeared to be falling asleep. He also observed that there was a passenger in the car who appeared to be asleep. Officer Kozak

2

contacted a patrol officer, Officer Aaron Naughton, and requested that Officer Naughton pull the Tahoe over if it continued to drift out of its lane. Officer Naughton did so, and Officer Kozak approached the car to speak with the driver.

When Officer Kozak approached the driver's side of the car, the driver, Hill, refused to look at the officer, instead staring straight ahead. Officer Kozak informed Hill that he had been stopped because he had repeatedly drifted into the left lane. Officer Kozak asked Hill for his license and registration and observed that Hill was extremely nervous. He described Hill as having a visibly pounding heart and hands that were shaking uncontrollably. At this point, Officer Kozak suspected that "his actions were beyond the scope of a normal traffic stop." J.A. 145. He asked Hill to step out of the vehicle. Hill refused, and Officer Kozak asked a second time. Hill again refused, then Officer Kozak asked again, opened the door of the vehicle, and told Hill to step out of the vehicle. At this point, Hill exited the vehicle.

Officer Kozak separately questioned Hill and his passenger, Nigel Hood. When questioned, Hill had a "broken speech pattern" and continually shifted his weight back and forth. J.A. 146. When questioned about whether there were drugs in the vehicle, Hill looked directly at Officer Kozak and denied that he had marijuana, cocaine, or methamphetamine in the vehicle. When

3

asked whether there was any heroin in the car, however, he dropped his head and looked at the ground, answering, "No, I don't do heroin." J.A. 147. Hill and Hood gave conflicting stories about the reason for their trip. Hood informed Officer Kozak that they went to pick up a radiator and a fan belt, whereas Hill indicated that he had been picking up a muffler. There were no auto parts visible in the car.

Shortly thereafter, Officer Kozak called for assistance from the Brunswick County Canine Unit. The canine unit arrived between 30 and 45 minutes later, and a dog alerted the police to the presence of narcotics. A search of the vehicle revealed a ten-bag bundle containing 0.3 grams of heroin and a handgun. Hill also had $3,135 in cash on his person. At the time of his arrest, after being read his Miranda rights, Hill admitted to the officers that the drugs belonged to him and that Hood had "nothing to do with" them. J.A. 151.[1]

---

[1] A second search occurred in November 2009, eight months after the incident in question. A trooper pulled over a speeding vehicle in which Hill was a passenger. The car smelled of marijuana, and when searched by consent, marijuana and heroin were found. While Hill moved to suppress this search as well, he does not challenge the district court's ruling against him in this appeal.

Hill was charged, on November 24, 2010, in five counts: conspiracy to possess with the intent to distribute 100 grams or more of heroin and a quantity of marijuana ("Count 1"); possession with the intent to distribute a quantity of heroin ("Count 2"); possession of a firearm in furtherance of a drug trafficking crime ("Count 3"); possession of a firearm as a convicted felon ("Count 4"); and possession with the intent to distribute a quantity of heroin and a quantity of marijuana and aiding and abetting ("Count 5").

Before trial, Hill filed a motion to suppress evidence seized on March 17, 2009 from Hill's Chevrolet Tahoe. Hill asserted that he was subjected to an unreasonable seizure because the original traffic stop was unreasonably extended while Officer Kozak waited for the canine unit to arrive. In its response, the Government argued that the law enforcement officer had a reasonable suspicion and probable cause to stop the Chevrolet Tahoe and had a reasonable suspicion in further detaining Hill beyond the original traffic stop.

Based on the written submissions by the parties, the district court held that the March 17, 2009 search was valid and denied Hill's motion to suppress. The district court found that the "traffic stop was valid as the officer had reasonable

suspicion to delay the Defendant while waiting for canine assistance." J.A. 71.

Hill's trial commenced on February 7, 2011. After testimony from the police officers who conducted the searches, as well as from two government witnesses who testified about Hill's drug dealing and trafficking activities, including David Kirton, a heroine dealer, who testified that Hill sold heroin and that he had purchased more than 400 grams of heroin from Hill, Hill moved for a judgment of acquittal. The district court denied the motion. Thereafter, Hill testified that he did not know Kirton and that he had never sold drugs to Kirton. Hill further testified that, before the traffic stop on March 17, 2009, he believed his felony drug possession had been expunged and, therefore, he was not prohibited from possession of firearms. On rebuttal, the Government introduced the testimony of a long-time drug dealer, Billy Dunlap, who had been in jail with Hill during the pendency of trial. Dunlap testified that Hill admitted to him that he was a drug dealer and that they had discussed how they packaged, cut, and sold drugs.

Following the close of the evidence, Hill renewed his motion for judgment of acquittal, which was also denied by the district court. On February 9, 2011, the jury convicted Hill on all five counts.

C.

Before sentencing, around March 11, 2011, defense counsel received a handwritten letter from Hill requesting that he withdraw as Hill's counsel. The letter explained that Hill's counsel had failed to "investigat[e] . . . all of [his] charges" and to "support" him during the trial. J.A. 338. On March 14, 2011, Hill's counsel filed a motion to withdraw. At the hearing on the motion, defense counsel explained that Hill's complaints were based on his performance as trial counsel and that he believed Hill could raise those issues on appeal or in a habeas proceeding. Hill's counsel noted that he discussed this with Hill, along with the fact that there would be a delay if counsel were substituted at this point. However, Hill continued to express that he wanted a new attorney. Hill's counsel nevertheless stated that he could continue to proceed as Hill's attorney, that he knew the facts of the case better than anyone else, and that he thus should not be substituted for new counsel prior to sentencing.

In response—and without questioning Hill—the district court stated, "I think that's a very responsible and professionally correct and honest way to present it," and that it would be "counterproductive to indulge the Defendant at this point before sentencing." J.A. 341-42. In denying the motion to withdraw, the district court found that "no other lawyer would be better

7

able to represent [Hill's] interest at sentencing because no other lawyer went through the trial and is closely familiar with all of the nuances of the case." J.A. 342. The district court further found that there was no professional or ethical conflict and that Hill had failed to show that counsel should be substituted.

## D.

Hill's presentence investigation report ("PSR") prepared by his probation officer set forth Hill's criminal history that consisted of a felony conviction of knowingly/purposefully making an explosion; a felony conviction of possession of hollow-nose bullets; a misdemeanor theft conviction; a felony conviction of possession of a controlled substance; and a misdemeanor conviction of loitering to obtain/sell a controlled dangerous substance in public, for a total of 2 criminal history points. The PSR placed Hill at a total offense level of 28 with a Guidelines range sentence of 120 months on Count 1 (based on the statutory minimum), 87 to 108 months on Counts 2, 4, and 5, and 60 months on Count 3.

At the sentencing hearing, Hill's counsel raised several objections to the PSR, which were overruled by the district court. The district court also found that an upward variance of Hill's sentence was warranted under the circumstances because

Hill's testimony at trial had been "completely dishonest and not anything close to approaching the truth." J.A. 351. The district court found that Hill was unrepentant and disrespectful of the trial process, and that as an "armed repeat offender," was likely to relapse into "drug trafficking and violent crime in the future" unless punished more severely. J.A. 353. The district court noted that the sentence would give Hill opportunities for educational and vocational training. As a result, the district court sentenced Hill to concurrent 180 month sentences on Counts 1, 2, and 5, which constituted a 60-month variance from the advisory range. The district court also sentenced Hill to a term of imprisonment of 120 months on Count 1 to be served concurrently with the sentence imposed on Counts 1, 2 and 5, and to a term of imprisonment of 60 months on Count 3, to be served consecutively. Hill timely filed this appeal.

## II.

### A.

On appeal, Hill contends that the district court erred when it denied his motion to suppress the evidence seized in the March 17, 2009 traffic stop because he was detained longer than was reasonably necessary to diligently investigate the justification for the stop. We disagree.

In reviewing the district court's denial of Hill's motion to suppress, "we review questions of law de novo and findings of . . . fact and reasonable inferences drawn from those findings for clear error." United States v. Holmes, 376 F.3d 270, 273 (4th Cir. 2004) (quotation marks and citation omitted). Absent clear error, we consider evidence presented at the suppression hearing "in the light most favorable to the government." Id.

While a police officer conducts the normal activities associated with a traffic stop, such as "requesting a driver's license and vehicle registration, running a computer check, and issuing a ticket," the officer may ask questions or undertake additional actions that are not "solely and exclusively focused on the purpose of that detention." United States v. Digiovanni, 650 F.3d 498, 507 (4th Cir. 2011) (citation omitted).

"If a police officer seeks to prolong a traffic stop to allow for investigation into a matter outside the scope of the initial stop, he must possess reasonable suspicion" of additional criminal activity. Id. While there is no "precise articulation of what constitutes reasonable suspicion, . . . a police officer must offer specific and articulable facts that demonstrate at least a minimal level of objective justification for the belief that criminal activity is afoot." United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008) (internal quotation marks and citation omitted). Officers may use their "training

10

and expertise" to identify sets of factors which are "individually quite consistent with innocent travel" yet "taken together, produce a reasonable suspicion of criminal activity." Id. at 336-37 (internal quotation marks and citation omitted).

In examining Officer Kozak's conduct, it is well established that a law enforcement officer is "objectively justified" in asking a person detained for a traffic violation to "get out of the car." Ohio v. Robinette, 519 U.S. 33, 40 (1996) (citing Pennsylvania v. Mimms, 34 U.S. 106, 111 n.6 (1977) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.")). Therefore, in asking Hill to get out of the Tahoe, Officer Kozak had not unconstitutionally extended the traffic stop. Similarly, Officer Kozak's questioning of Hill did not violate the Fourth Amendment's proscription against unreasonable searches and seizures. Although his questions were not strictly related to Hill's alleged traffic violation, the questions lasted only a few minutes and thus did not measurably extend the stop.

By the time Officer Kozak began questioning Hood, and certainly by the time he called for a canine unit, we conclude that he had a reasonable suspicion of criminal activity. From

11

the initiation of the stop, Hill acted in a manner potentially consistent with criminal activity when he shook uncontrollably, stared straight ahead without looking at Officer Kozak, and refused to cooperate with lawful requests to exit the vehicle. Within a few seconds of questioning, he appeared nervous, speaking with a broken speech pattern and shifting his weight as though nervous. Within a few minutes, he looked at the ground when questioned about whether he was transporting heroin and gave an inconsistent statement from that of his passenger regarding what type of part they had purchased. "[N]ervous and evasive behavior" is relevant to establishing a reasonable suspicion of criminal activity, Branch, 537 U.S. at 338, as are false statements, id. at n. 1 (citation omitted). Thus, even if Officer Kozak extended the traffic stop beyond its original purpose, he did so with "reasonable suspicion" that Hill was engaged in criminal activity. See id.

To support his contention that the traffic stop was unreasonably extended, Hill relies heavily on this Court's opinion in Digiovanni, in which we affirmed the district court's grant of the defendant's motion to suppress on the grounds that the police had unreasonably extended the traffic stop and, moreover, that the police lacked reasonable suspicion to turn the traffic stop into a drug investigation. 650 F.3d at 515. Digiovanni involved a defendant who was driving a rental car on

12

a road frequented by drug traffickers, and only appeared to "tremble" slightly when handing over his license and registration. Digiovanni, 650 F.3d at 512. In this case, by contrast, Hill exhibited, among other things, extreme nervousness and gave an implausible story that was contradicted by his passenger. Thus, Digiovanni is clearly distinguishable from this case. Accordingly, the district court properly concluded that, under the totality of the circumstances, the officer's detention of Hill was supported by reasonable suspicion.

B.

Next, Hill asserts that the district court abused its discretion when it denied the motion to withdraw filed by Hill's defense counsel. We disagree.

We review the district court's denial of defense counsel's motion to withdraw for abuse of discretion. United States v. Hanley, 974 F.2d 14, 17 (4th Cir. 1992). In evaluating the defendant's claim, we consider: "(1) the timeliness of the motion; (2) the adequacy of the district court's inquiry into the defendant's complaint; and (3) whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense." Id. We "weigh these factors against the trial court's interest in the orderly

13

administration of justice." United States v. Reevey, 364 F.3d 151, 157 (4th Cir. 2004) (citation omitted).

Here, Hill attempts to emphasize the second factor, i.e., the adequacy of the district court's inquiry, because the district court did not question Hill about his motivations for seeking new counsel and instead relied on his counsel's representations of the situation. Hill asserts that the district court abused its discretion by declining to give him an opportunity to explain in person his reasons for requesting new counsel. At the hearing on the motion to withdraw, Hill's counsel explained that he had discussed the complaints with Hill. During their discussion, Hill's counsel informed Hill that any concerns about the trial performance could be raised in a habeas proceeding or on appeal. Hill's counsel explained to the district court that he believed he could represent Hill at the sentencing hearing because he was thoroughly familiar with the facts of the case. Based on this inquiry, the district court denied the motion.

An abuse of discretion does not occur simply because "the district court's questioning" as to a defendant's reasons for requesting new counsel and the "level of communication between him and [his lawyer] could have been more probing." See United States v. Hagen, No. 09-5096, 2012 WL 764429, at *9 (4th Cir. Mar. 12, 2012) (unpublished). We agree with Hill that it is

14

better practice for the district court to ask a defendant to explain his reasons for requesting new counsel at a hearing on such a motion. Nonetheless, failure to do so does not rise to an abuse of discretion if the district court sufficiently examines the factual record and alleged bases for requesting new counsel. See United States v. Perez, 661 F.3d 189, 192 (4th Cir. 2011) (holding that the district court did not abuse its discretion by denying the defendant's motion to substitute counsel between trial and sentencing without a hearing); see also Reevey, 364 F.3d at 157 (deeming the district court's inquiry adequate because "[t]he court was informed that [defendant's] counsel had spent an extensive amount of time with [him] discussing various aspects of the case [and t]he court also ensured that his lawyers were prepared [for upcoming proceedings]").

Here, Hill's counsel indicated that all of Hill's complaints involved counsel's trial performance, and that none of these issues would affect his ability to represent Hill at sentencing. The district court found that there was no "professional or ethical conflict" that would prevent Hill's counsel from adequately representing him at the sentencing hearing. J.A. 342. Hill's letter explaining his reasons for requesting new counsel did not allege that there was any conflict or breakdown in communication. Moreover, Hill's

15

counsel indicated that he and Hill had discussed the issues Hill had with counsel's trial performance shortly before the hearing on the motion to withdraw. Subsequently, at the sentencing hearing, counsel indicated that he had explained the PSR and its implications to Hill. Finally, the court properly considered that substitution of counsel might delay the orderly administration of justice. The court found that delay could result from substitution of counsel because Hill's trial counsel had "an absolute thorough knowledge" of the "nuances of this case." J.A. 342.

In sum, the statements made by the district court when denying the motion reflect that it thoughtfully considered the reasons Hill sought new counsel, as well as the potential delay to the proceedings and other appropriate factors. Thus, the district court did not abuse its discretion in denying the motion to withdraw.

### C.

Finally, Hill asserts that the district court's upward variance of 60 months in Hill's sentence was unreasonable. We disagree.

"We review any sentence, whether inside, just outside, or significantly outside the Guidelines range, under a deferential abuse-of-discretion standard." United States v. King, 673 F.3d

16

274, 283 (4th Cir. 2012) (citation omitted). We first review for "significant procedural error." United States v. Evans, 526 F.3d 155, 162 (4th Cir. 2008). In choosing a sentence for a defendant, the district court must conduct an "individualized assessment of the facts presented" and "adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." King, 673 F.3d at 283 (quotation marks and citation omitted). Second, we review the "substantive reasonableness of the sentence." Evans, 526 F.3d at 161 (citation omitted). In this regard, we defer substantially to the district court. See id. at 162 ("[T]he fact that an appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal." (quotation marks and citation omitted)).

Hill asserts that the upward variance of 60 months punishes him four times more harshly than he would have been, had the "obstruction of justice" guideline been applied. Appellant Br. at 26. Nevertheless, he acknowledges that "perhaps an adjustment to [his] advisory sentencing range was warranted." Id. at 27 (citing U.S.S.G. § 3C1.1). Even assuming that the district court did fail to properly look to U.S.S.G. § 3C1.1 to address Hill's false testimony, any such procedural error is harmless, because an "upward variance based on the [18 U.S.C.] §

17

3553(a) factors justifie[s] the sentence imposed." United States v. Rivera-Santana, 668 F.3d 95, 104 (4th Cir. 2012).

Here, in imposing the upward variance, the district court supported its sentence with reasons based on the relevant 18 U.S.C. § 3553(a) factors.[2] Specifically, as the district court pointed out:

> The offense is a serious offense. He has shown no respect for the law. The punishment at that level [180 month sentence in Counts 1, 2, and 5] the Court finds to be a just amount . . . given his age and his

---

[2] 18 U.S.C. § 3553 (a) states in relevant part:

Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph The court, in determining the particular sentence to be imposed, shall consider--

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; [and]

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

> chronic criminal behavior and lack of reform shows, under number 2, that this would be an adequate deterrent. . . . under number 3, his repeat offender history shows that the public needs to be further protected from his crimes.

J.A. 355. The district court also found that Hill showed "great disrespect" for the trial process by going "out of his way to obstruct justice by testifying falsely on material facts to the jury." J.A. 353. The district court further noted that Hill would have educational and vocational opportunities in prison during his sentence.

In sum, we find the district court's determination was both procedurally and substantively reasonable. The district court took into account the seriousness of Hill's offense, his criminal history, his disrespect for the trial process, and his likelihood of recidivism in its decision to grant an upward variance. Accordingly, because we must "give due deference to the [d]istrict [c]ourt's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence" of 240 months of imprisonment, we hold that district court did not abuse its discretion. Gall v. United States, 552 U.S. 38, 59–60 (2007).

III.

For the foregoing reasons, we affirm the decision of the district court.

<u>AFFIRMED</u>