**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-5161

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TROY HENLEY, a/k/a Chubbs, a/k/a Bill Bill,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Andre M. Davis, District Judge. (1:08-cr-00046-AMD-1)

Argued: May 14, 2010                    Decided: July 6, 2010
                 Amended: April 29, 2020

Before MOTZ, KING, and KEENAN, Circuit Judges

Affirmed by unpublished opinion. Judge Keenan wrote the opinion, in which Judge Motz and Judge King concurred.

**ARGUED:** Stuart O. Simms, BROWN, GOLDSTEIN & LEVY, Baltimore, Maryland, for Appellant. Michael Joseph Leotta, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Michael C. Hanlon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

KEENAN, Circuit Judge:

A jury convicted Troy Henley of one count of conspiracy to commit robbery and two counts of robbery, in violation of 18 U.S.C. § 1951(a), and two counts of possession of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). The district court sentenced Henley to a total of 38 years' imprisonment. Henley challenges on appeal the district court's refusal to suppress evidence of statements he made to law enforcement officers. He also asserts that the district court erred in admitting certain evidence, including evidence of Henley's flight from the police, evidence of his threat against a witness, and evidence of certain bad acts unrelated to the robberies. Finally, Henley challenges certain rulings regarding jury instructions, and the procedural reasonableness of his sentence. For the following reasons, we affirm Henley's convictions and sentence.

I.

We will review the facts in the light most favorable to the government. United States v. Nunez, 432 F.3d 573, 576 (4th Cir. 2005). In 2006, Henley, along with several co-conspirators, planned and participated in robberies at a Wal-Mart Store in Ellicott City, Maryland, on August 2, 2006, and at a Check Point Check Cashing Store in Baltimore, Maryland, on December 30,

2006. During the robberies, some of Henley's co-conspirators entered the stores, assaulted various employees, pointed guns at them, and left the stores with cash.

Several months after these robberies, Baltimore City police officers arrested Henley for an unrelated larceny that occurred in 2004. On March 27, 2007, Detective Julie Pitocchelli and another officer observed Henley at a "car wash" establishment. When Henley saw the officers, he "jumped" into the driver's side of a truck and drove down an alley. Detective Pitocchelli and several other police officers in marked police vehicles chased the truck that Henley was driving through the streets of Baltimore. Ultimately, the truck collided with a tree. The police officers apprehended Henley about two blocks away from the scene of the accident and arrested him.

After his arrest, the police took Henley to the hospital based on his complaint that he injured his neck in the accident. While at the hospital, Henley spoke with Special Agent Stacey Bradley of the Federal Bureau of Investigation, the chief officer assigned to investigate the robberies described above. Henley told Agent Bradley that he was willing to "talk" with her at a later date.

On April 2, 2007, six days after Henley's arrest on the 2004 larceny charge, Agent Bradley and another federal law enforcement officer interviewed Henley. At the start of the

3

interview, the officers informed Henley of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and Henley signed a form waiving those rights. Henley told the officers that he was "feeling better," and that he had not been taking the pain medication he was prescribed at the hospital.

During the interview, the officers repeatedly asked Henley about his acquaintances and their general involvement in the commission of robbery offenses. After the officers told Henley that these acquaintances had implicated Henley in the commission of some robberies, Henley denied any such involvement. He also stated that about two or three weeks before the interview, he learned that the "Feds" were investigating certain robberies and were "lookin[g]" for him in connection with those crimes. Several months after the interview, Henley was arrested for his involvement in the present offenses.

A few weeks after his arrest, Henley placed a telephone call to his sister from jail. During this conversation, Henley's sister talked about the police and asked the name of the female police officer involved in Henley's case. Henley responded, "Stacey Bradley," and stated in part, "I hate that bitch. I'll kill that bitch."

Henley's case proceeded to trial on the present offenses. Before trial, Henley filed a motion in limine seeking to exclude certain evidence. The challenged evidence included testimony

4

that he fled from police on March 27, 2007, and his statement to his sister threatening to kill Agent Bradley. Henley also sought to exclude the testimony of three witnesses, described below, on the basis that evidence of those witnesses' criminal activity unrelated to the present robberies would be prejudicial. The district court denied Henley's motion in limine and admitted the challenged evidence at trial.

Also prior to trial, Henley filed a motion to suppress the statements he made during his April 2, 2007 police interview. The district court denied Henley's motion and permitted Agent Bradley to testify at trial that during the April 2, 2007 interview, Henley provided her with his cell phone number. Agent Bradley testified that this information assisted in her investigation and resulted in her conclusion that Henley's cell phone was located at the scene when the present robberies occurred. In addition, the district court permitted Agent Bradley to testify that Henley told her during the interview that he was aware he was under investigation for the commission of some robberies.

At the close of trial, the district court considered the parties' submissions of proposed jury instructions. As relevant to this appeal, Henley submitted a jury instruction addressing multiple conspiracies, which the district court rejected. Also,

over Henley's objection, the district court gave a jury instruction regarding Henley's flight from police.

Finally, the district court gave the jury a limiting instruction regarding the evidence of criminal activity unrelated to the present robberies. That instruction informed the jury that it could not "use" evidence of unrelated crimes committed by Henley's acquaintances to infer that Henley "carried out the acts charged in this case." The instruction also stated that even if the jury found that Henley committed unrelated crimes "similar" to those committed by his acquaintances, the jury could not consider such evidence to support an inference that Henley committed the crimes charged in the indictment.

After the jury convicted Henley of conspiracy to commit robbery, two counts of robbery, and two counts of possession of a firearm, the district court conducted the sentencing phase of trial. The presentence report (PSR) recommended a total Guidelines range for the conspiracy and robbery counts of 210-262 months, and the statutory minimum sentence for the firearm counts of 384 months. Henley objected to the recommended Guidelines range on several grounds and urged the court to consider a total Guidelines range of 78-97 months for the conspiracy and robbery convictions.

## II.

### A.

We first consider whether the district court erred in denying Henley's motion to suppress his statements made to law enforcement officers during the April 2, 2007 interview. Henley asserts that these statements were involuntary. According to Henley, the interviewing officers failed to determine whether any injuries from the March 27, 2007 automobile accident "could have affected" Henley's ability to waive his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Henley also argues that because of the "congenial" nature of the interview, the officers persuaded Henley to make incriminating statements that he did not intend to volunteer. We disagree with Henley's arguments.

On appeal, we review de novo a district court's determination regarding the voluntary nature of a defendant's statement. United States v. Abu Ali, 528 F.3d 210, 232 (4th Cir. 2008). In assessing whether a statement was voluntary, we examine the totality of the circumstances in which the statement was given. Id. A statement is voluntary when it represents the free and unconstrained choice by the speaker. Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). In contrast, a statement is involuntary when the speaker's will is overborne

7

and his capacity for self-determination is critically impaired. Id. at 225; Abu Ali, 528 F.3d at 232.

We observe that Henley fails to assert that any injury he suffered as a result of the March 27, 2007 accident actually affected his ability to waive his rights and to speak freely. Contrary to Henley's assertion that the officers failed to assess the presence and severity of Henley's injuries, Agent Bradley testified that on the day of the interview, Henley indicated that he felt better and was not taking the pain medication he had been prescribed.

During the time that the interviewing officers engaged in general conversation with Henley, they made clear their desire to obtain information about the commission of robberies. The officers repeatedly asked Henley whether he or his acquaintances participated in such acts. The officers also advised Henley that his acquaintances had told the officers that Henley had committed some robberies. Additionally, over the course of the interview, Henley stated that he was aware that he was being investigated for his involvement in the commission of some robberies.

Based on the totality of the circumstances of the interview, we conclude that Henley's will was not overborne, and that his statements were voluntary. See Abu Ali, 528 F.3d at 232. The evidence showed that in seeking to elicit information

8

from Henley about the commission of robberies, the officers did not make any promises or otherwise induce Henley to make statements that he did not wish to make freely. See Schneckloth, 412 U.S. at 225; Abu Ali, 528 F.3d at 232. Therefore, we hold that the district court did not err in denying Henley's motion to suppress.

B.

Next, Henley argues that the district court erred in admitting evidence of his attempt to flee from the police as proof of his consciousness of guilt. Henley also argues that the district court erred in giving the jury an instruction regarding flight. Henley notes that after he attempted to evade capture, he was arrested on an outstanding, unrelated warrant from 2004. Therefore, Henley asserts, the evidence of his flight showed no more than a general consciousness of guilt and did not reflect a particular sense of guilt based on his involvement in the present robberies.[*]

In response, the government argues that because Henley knew he was under investigation for his involvement in some robberies at the time he fled from the police, the district court properly

_____

[*] Henley also argues that because he was not the driver of the truck, his action did not constitute flight from the police. This argument is without merit because two officers testified that Henley was the driver of the truck.

9

admitted the evidence of flight.  The government further argues that this evidence supported the district court's decision to instruct the jury on flight.  We agree with the government's arguments.

On appeal, we review under an abuse of discretion standard a district court's decision to admit certain evidence and to give an accompanying jury instruction.  United States v. Udeozor, 515 F.3d 260, 265 (4th Cir. 2008); United States v. Hurwitz, 459 F.3d 463, 474 (4th Cir. 2006).  We have recognized that evidence regarding a criminal suspect's flight is inherently weak because one who flees to evade capture by the police does not necessarily do so based on his consciousness of guilt for committing a certain crime.  See United States v. Foutz, 540 F.2d 733, 739-40 (4th Cir. 1976).  Therefore, we have held that before a jury may be allowed to consider evidence of flight, the following links in a chain of inferences must be established and adequately supported by the evidence: (1) between a defendant's behavior and his flight, (2) between his flight and his consciousness of guilt, (3) between his consciousness of guilt and his consciousness of guilt concerning the crime charged, and (4) between his consciousness of guilt concerning the crime charged and his actual guilt of the crime charged.  United States v. Obi, 239 F.3d 662, 665-65 (4th Cir. 2001).

10

In the present case, Henley challenges only the adequacy of the evidence to support the third link, the connection between his consciousness of guilt and his consciousness of guilt concerning the present robberies. Even though the robberies occurred several months prior to Henley's flight from police, Henley told the officers during his April 2, 2007 interview that he had learned just three weeks before his attempt to evade capture that he was under investigation for his participation in some robberies. In contrast, the criminal activity that served as the basis for Henley's arrest took place at least three years before his flight from police.

The close connection in time between Henley's flight and his recently acquired knowledge that he was under investigation for some robberies supports the inference that Henley fled from the police because of his involvement with the present robberies. Therefore, we conclude that the evidence established and adequately supported the link between Henley's consciousness of guilt and his consciousness of guilt for the crimes charged. See Obi, 239 F.3d at 665.

We also conclude that the evidence of Henley's flight was sufficient to support the court's decision to give the jury a "flight" instruction. This jury instruction read:

> You have heard evidence that defendant fled from law enforcement after he believed that he was about to be arrested for certain crimes. If proved, the flight of

11

a defendant after he knows he is to be accused of a crime may tend to prove that the defendant believed he was guilty. It may be weighed by you in this connection and weighed with all the other evidence. However, flight may not always reflect feelings of guilt. Moreover, feelings of guilt which are present in many innocent people do not necessarily reflect actual guilt.

We observe that the language of the jury instruction was balanced and informed the jurors that evidence of flight may not reflect Henley's consciousness of guilt. We conclude that this instruction fairly addressed the inherent weakness of flight evidence and permitted the jury to evaluate the evidence in this case in determining whether the evidence of flight demonstrated Henley's consciousness of guilt for the crimes charged. See Foutz, 540 F.2d at 739-40. Accordingly, we hold that the district court did not abuse its discretion in admitting evidence of Henley's flight and in instructing the jury on this issue.

C.

We next consider Henley's argument that the district court erred in admitting into evidence his statement threatening to kill Agent Bradley. Henley contends that his statement constituted an isolated expression of anger unaccompanied by a plan to carry out the threat. Henley asserts that because he did not intend to harm or influence a potential witness, the

12

court improperly admitted the statement into evidence. We disagree with Henley's arguments.

We review a district court's admission of evidence for an abuse of discretion. Udeozor, 515 F.3d at 265. We have held that evidence of a threat against an adverse witness is admissible to prove a defendant's consciousness of guilt if the evidence relates to the offense charged and is reliable. United States v. Young, 248 F.3d 260, 272 (4th Cir. 2001). We have explained that such evidence is admissible because a threat against an adverse witness indicates a defendant's awareness that his case is weak or unfounded. United States v. Van Metre, 150 F.3d 339, 352 (4th Cir. 1998).

We observe that Henley's statement was admitted into evidence to show Henley's consciousness of guilt of the crimes charged and not to prove a separate criminal offense. In this context, we conclude that the district court did not abuse its discretion in admitting Henley's threatening statement. Henley's statement, "I'll kill [Agent Bradley]," demonstrated his present desire to harm an investigator of the robberies charged in the indictment. Also, Henley made the statement only a few weeks after his arrest for these robberies. Thus, Henley's threatening statement directly related to the charged offenses, and the district court did not abuse its discretion in admitting the statement into evidence to show Henley's

13

consciousness of guilt. See Young, 248 F.3d at 272; Van Metre, 150 F.3d at 352.

## D.

Henley also argues that the district court erred in permitting testimony by three witnesses about "bad acts" unrelated to the robberies charged in the indictment. Henley asserts that he was unduly prejudiced by the testimony of ███ ███ and █████████ concerning their "other" criminal activity, and █████████' testimony concerning his "scouting" of check cashing store locations with Henley. We disagree with Henley's assertions.

Under Rule 403 of the Federal Rules of Evidence, evidence is admissible when the danger of unfair prejudice does not outweigh the probative value of the evidence. See also United States v. Grimmond, 137 F.3d 823, 833 (4th Cir. 1998). With regard to potentially prejudicial evidence, we have acknowledged that cautionary and limiting instructions given to the jury may alleviate slight dangers of prejudice. Id. at 833 n.15 (citing United States v. Queen, 132 F.3d 991 (4th Cir. 1997) and United States v. Powers, 59 F.3d 1460, 1468 (4th Cir. 1995)).

At trial, ████ testified that he had entered into a plea agreement and had pled guilty to a charge of bank robbery. ████ clearly stated, however, that Henley was not involved in the commission of that bank robbery. This portion of ████'s

14

testimony, therefore, related only to ████'s own criminal activity and served to impeach ████'s credibility.

████ also testified that Henley told him that Henley had committed some robberies at gas stations. This evidence provided the jury with background information concerning Henley's confidential relationship with ████. The district court mitigated any prejudicial effect of this testimony by giving an immediate cautionary instruction and a similar limiting jury instruction at the conclusion of trial. See Grimmond, 137 F.3d at 833, n.15.

████ testified that Henley discussed the possibility of committing "other robberies" with ████ before their participation in the robbery at the Check Point store. This evidence likewise was probative of the relationship between Henley and one of his co-conspirators. Additionally, ████' testimony about his "scouting" missions with Henley of check cashing establishments directly related to the robbery at the Check Point store and, therefore, was probative evidence regarding the crimes charged against Henley. Accordingly, we conclude that the probative value of the testimony by these three witnesses outweighed its prejudicial effect, and that the district court did not err in admitting this testimony. See id., 137 F.3d at 833.

15

E.

Henley also challenges the district court's refusal to give the jury an instruction regarding multiple conspiracies. Henley asserts that the evidence showed that his co-conspirators engaged in "different enterprises" beyond the conspiracy charged in the indictment and that, without the multiple conspiracy instruction, the jury improperly could impute evidence of unrelated activity to Henley. Henley argues that this evidence showed that Henley's co-conspirators committed robberies at banks and were suspects in some robberies that occurred at restaurants. Finally, Henley asserts that this evidence also included information that he routinely sold illegal drugs, which did not relate to the overall conspiracy at issue in his case. We are not persuaded by Henley's arguments.

We review a district court's decision to give or refuse a jury instruction for an abuse of discretion. Hurwitz, 459 F.3d at 474. We have held that a district court is not required to instruct the jury on multiple conspiracies unless the evidence demonstrates that the defendant was involved in a separate conspiracy unrelated to the overall conspiracy charged in the indictment. Nunez, 432 F.3d at 578.

In this case, the evidence did not show that Henley participated in any conspiracies other than the conspiracy charged in the indictment. With regard to the evidence

16

concerning robberies committed at banks and restaurants, the evidence demonstrated that Henley did not participate in these crimes. The only evidence of Henley's unrelated criminal activity involved Henley's sale of drugs and his commission of robberies at gas stations. This evidence, however, was insufficient to support Henley's requested jury instruction because the evidence failed to show that Henley entered into any agreements or otherwise conspired with other criminal agents to commit these crimes. See Nunez, 432 F.3d at 578. Additionally, the district court's cautionary and limiting instructions to the jury mitigated any potential prejudice caused by this evidence. Therefore, we conclude that the district court did not abuse its discretion in refusing to give a multiple conspiracy instruction.

F.

Finally, Henley asserts that his sentence was procedurally unreasonable. He contends that the district court erred in failing to calculate the appropriate Guidelines range at the outset of the sentencing proceeding. According to Henley, the district court's error prejudiced him because the court did not consider and rule on Henley's objections to the Guidelines range recommended in the PSR for his conspiracy and robbery counts.

Henley concedes that he did not make this argument in the district court and that, therefore, we review his claim for

17

plain error.  United States v. Lynn, 592 F.3d 572, 577 (4th Cir. 2010) (citing Fed. R. Crim. P. 52(b)).  To demonstrate plain error, a defendant must show that the district court erred, that the error was plain, and that the error affected the defendant's substantial rights.  United States v. Olano, 507 U.S. 725, 732 (1993).  In the context of sentencing, an error affects a defendant's substantial rights if the defendant can show that his imposed sentence was longer than it would have been absent the district court's error.  United States v. Angle, 254 F.3d 514, 518 (4th Cir. 2001).

In this case, we first consider whether the district court committed significant procedural error.  Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Evans, 526 F.3d 155, 161 (4th Cir. 2008).  As a matter of procedure, a district court must begin its sentencing proceeding with a correct calculation of the applicable Guidelines range.  Gall, 552 U.S. at 49; Evans, 526 F.3d at 161.

Here, the district court did not err by failing to calculate the applicable Guidelines range, because, at the beginning of the sentencing proceeding, the court adopted the "approach" and the calculated range set forth in the PSR.  The PSR recommended the statutory minimum sentence for the firearm counts and a Guidelines range of 210-262 months for the conspiracy and robbery counts.

18

Even if we assume, however, that the district court erred in failing to announce a "final" Guidelines range before considering the factors under 18 U.S.C. § 3553(a), Henley has failed to show that, absent such error, his sentence would have been shorter than the one actually imposed.  See Angle, 254 F.3d at 518.  In fact, Henley's 72-month sentence for the conspiracy and robbery counts was shorter than the "low-end" of the Guidelines range of 78-97 months that Henley urged the district court to consider based on his objections to the PSR. Therefore, we conclude that the district court did not plainly err in imposing Henley's sentence, and that Henley's sentence was procedurally reasonable.

III.

Based on our holdings stated above, we affirm the district court's judgment.

AFFIRMED