PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

   *Plaintiff-Appellee,*

v.

AGUSTIN RIVERA-SANTANA,

   *Defendant-Appellant.*

No. 10-5123

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, Senior District Judge.
(3:10-cr-00074-REP-1)

Argued: October 28, 2011

Decided: February 2, 2012

Before WILKINSON, KING, and DIAZ, Circuit Judges.

---

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Wilkinson and Judge Diaz joined.

---

## COUNSEL

**ARGUED:** Mary Elizabeth Maguire, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. Stephen David Schiller, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Pub-

lic Defender, Alexandria, Virginia, Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellee.

**OPINION**

KING, Circuit Judge:

Defendant Agustin Rivera-Santana seeks relief from a sentence of 240 months in prison, imposed as a result of his illegal reentry into the United States after being removed for a conviction of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). On appeal, Rivera-Santana mounts several procedural challenges to the sentence, contending that the district court erred in making two upward departures in the advisory Sentencing Guidelines range, augmented by an upward variance of 90 months therefrom. He also asserts that the resulting sentence — the statutory maximum — is, in any event, substantively unreasonable. As explained below, we reject these contentions and affirm.

I.

A.

Rivera-Santana was born in Mexico in 1956.[1] In 1973, he came to the United States as a lawful permanent resident and worked as an agricultural laborer in California. On December 20, 1974, Rivera-Santana was convicted of reckless driving in California and sentenced to 125 days in jail. In the 1970s and

---

[1]We recapitulate herein the stipulated facts underlying Rivera-Santana's conviction, plus certain background information contained in the Presentence Investigation Report, which was accepted without objection. *See* J.A. 24-27, 107. (Citations herein to "J.A.___" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

early 1980s, he was arrested four more times in California: for drunk driving in January 1975 and again in April 1975; for grand theft in 1981; and for assault and battery in 1983.[2]

In 1988, Rivera-Santana shot and killed his pregnant wife. He was thereafter convicted in California of voluntary manslaughter and received an eighteen-year sentence. Rivera-Santana was paroled from prison on January 29, 1998, and was deported to Mexico on February 7, 1998. Just a few days later, on February 16, 1998, he reentered the United States illegally. On that occasion, Rivera-Santana was attempting to smuggle other aliens across the border. He was arrested by border patrol agents the next day, February 17, 1998, and deported to Mexico a week later. On March 1, 1998, a mere five days after being deported, Rivera-Santana illegally reentered this country a second time, evading apprehension until August 16, 2000, when he was arrested in California for driving under the influence ("DUI"). He nevertheless remained in the United States for another year, until being arrested on May 7, 2001, by agents of the Immigration and Naturalization Service. On May 10, 2001, Rivera-Santana's prior removal order was reinstated, and he was deported again on June 12, 2001.

In March 2005, Rivera-Santana illegally reentered the United States for a third time, travelling to Virginia to live with his daughter and her family. Soon thereafter, on August 24, 2005, he was convicted in Virginia of an open container violation and fined fifty dollars. A few months later, on February 5, 2006, Rivera-Santana sexually assaulted his eight-year-old granddaughter in his daughter's home. As a result, he was convicted in Virginia Beach of aggravated sexual assault and attempted forcible sodomy. For these offenses, he was sentenced to thirty years in prison, with all but six years and

---

[2]Except for the 1983 assault and battery charge, which was not prosecuted, the probation officer in this case was unable to determine the dispositions of the California arrests.

ten months suspended. Rivera-Santana is scheduled for release from the Virginia prison facilities on March 9, 2012.

On March 2, 2010, the grand jury in the Eastern District of Virginia indicted Rivera-Santana for illegal reentry after a prior removal for a conviction of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2).[3] On June 23, 2010, Rivera-Santana entered a plea of guilty to that offense, which carries a statutory maximum of 240 months in prison. The stipulated statement of facts filed during Rivera-Santana's plea proceedings reflects that his voluntary manslaughter conviction in California constitutes an aggravated felony under § 1326(b)(2). *See* J.A. 24.

## B.

In conjunction with the sentencing proceedings in the district court, the probation officer prepared Rivera-Santana's Presentence Investigation Report (the "PSR"). The PSR recommended an adjusted offense level of 21, reflecting a sixteen-level enhancement pursuant to Guidelines section 2L1.2 (the "illegal reentry guideline") for Rivera-Santana's prior voluntary manslaughter conviction. The resultant offense level, considered in combination with the applicable criminal history category, calculated at IV, yielded an advi-

---

[3]Section 1326 of Title 8 is a somewhat convoluted statutory provision, criminalizing an unlawful entry by an alien into the United States and providing for the punishment thereof. The basic offense of unlawful reentry is provided for and described in subsection (a). That subsection provides, in pertinent part, that "any alien who — (1) has been . . . removed . . . and thereafter (2) . . . is at any time found in[ ] the United States[ ] unless . . . the Attorney General has expressly consented to such alien's reapplying for admission" is subject to imprisonment for "not more than 2 years." Subsection (b) of § 1326 creates a statutory enhancement for cases involving, inter alia, an aggravated felony. In such a case, subsection (b)(2) provides, in relevant part, that an alien "whose removal was subsequent to a conviction for commission of an aggravated felony . . . shall be . . . imprisoned not more than 20 years."

sory Guidelines range of 57 to 71 months.[4] On September 10, 2010, the government moved for an upward variance, requesting that Rivera-Santana receive the 240-month statutory maximum.

The district court conducted its sentencing hearing on October 8, 2010, first determining that Rivera-Santana's criminal history was underrepresented in the PSR-recommended Guidelines calculations because certain of his prior convictions and arrests were unscored. *See* USSG § 4A1.3(a) (providing for upward departure where "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history"). Hence, the court upwardly departed, adding seventeen criminal history points to the PSR-recommended eight.[5] The court's revised total of twenty-five

---

[4]The PSR specified that six criminal history points were assigned for Rivera-Santana's prior criminal record: three points for the voluntary manslaughter offense in California and three points for the aggravated sexual assault conviction in Virginia. Two additional criminal history points were assigned for the offense of conviction. These eight criminal history points resulted in the PSR-recommended criminal history category of IV. Pursuant to the illegal reentry guideline, the base offense level of 8, as calculated in the PSR, was enhanced sixteen levels on account of Rivera-Santana's prior conviction in California for a crime of violence (i.e., voluntary manslaughter). *See* USSG § 2L1.2(a), (b)(1)(A)(ii) (2009) (providing base offense level of 8 for defendant convicted of unlawfully entering United States subject to increase by sixteen levels where defendant was previously removed after conviction for felony offense that constitutes crime of violence). In sum, after Rivera-Santana received a three-level downward adjustment for acceptance of responsibility, *see id.* § 3E1.1, the PSR-recommended offense level was 21.

[5]More specifically, the sentencing court identified the following as the bases for its additional seventeen criminal history points:

- One criminal history point for Rivera-Santana's 1974 reckless driving conviction;

- One point each for his two 1975 drunk driving arrests;

- One point for his 1981 grand theft arrest;

criminal history points elevated Rivera-Santana's criminal history category to VI (the highest possible).

The sentencing court then determined that a criminal history category of VI, coupled with an offense level of 21, produced an inadequate advisory Guidelines range (77 to 96 months). The court explained:

> [Rivera-Santana's] history bespeaks a very dangerous person. It bespeaks one of the most dangerous people I've ever seen before this Court. It bespeaks a person who habitually, continually commits crimes, benefits not at all from leniency which has been extended in a number of ways and occasions as is outlined in the [PSR], and that there is — one of the most effectively demonstrated tendencies to recidivate I have seen since I came on the bench in 1992.

J.A. 155.

The sentencing court then upwardly departed for a second time, to a higher offense level. *See* USSG § 4A1.3(a)(4)(B) (providing for upward departure if highest criminal history

---

- Three points for his 1983 assault and battery arrest;

- One point for his 1989 voluntary manslaughter conviction for killing his pregnant wife (accounting for death of fetus);

- Two points for the February 1998 alien smuggling;

- Two points each for Rivera-Santana's illegal reentries of February 16, 1998, and March 1, 1998;

- One point for his 2000 DUI arrest;

- One point for the 2006 aggravated sexual assault of his grand-daugther; and

- One point for a non-charged offense of driving without a license in Virginia.

category deemed insufficient). In so doing, the court allocated one offense level for every three of the seventeen unscored criminal history points, raising the offense level by five levels, from 21 to 26. With a criminal history category of VI, the second departure authorized the court to establish the advisory Guidelines range at 120 to 150 months.

The district court then concluded, however, that "a sentence of 120 to 150 months [was] not sufficient to punish the defendant and to accomplish the objectives of the sentencing guidelines." J.A. 158. After considering the sentencing factors set forth in 18 U.S.C. § 3553(a), the court decided that an upward variance to the statutory maximum was warranted.[6] In elaborating on the § 3553(a) factors and in further justification for a variance to the statutory maximum, the court explained:

> This man has proved for years that he is a danger to society. He has proved for years that he has no respect for the law. He has proved for years that it is necessary to take strong action to protect the public. A man who will kill his wife, pregnant wife, and kill his own child and molest his granddaughter has no respect for the law and is a menace and . . . a proven danger to the public, to the citizenry of the nation that he has chosen on multiple occasions illegally to invade, and when he comes here, he violates all kinds of laws, any kind of law that stands in the way of accomplishing what he wants to do.

---

[6]The terms "variance" and "departure" describe two distinct sentencing options available to a sentencing court. *See Irizarry v. United States*, 553 U.S. 708, 713-16 (2008). A departure is a sentence "imposed under the framework set out in the Guidelines." *Id.* at 714. Conversely, a variance has been recognized as a non-Guidelines sentence (either above or below the properly calculated advisory Guidelines range) that is nevertheless "justified under the sentencing factors set forth in 18 U.S.C. § 3553(a)." *Id.* at 715.

> If he wants to gratify himself, he plunders an eight-year-old child. If he wants to have some company or make some money, he smuggles illegal aliens. He gets deported, he comes right back. He drives drunk. He steals, he beats. He is, in short, an anathema to society.

J.A. 158.

Accordingly, the sentencing court concluded that, in order to deter Rivera-Santana, properly protect the public, and promote respect for the law, it was obliged to vary upward to the statutory maximum and impose a sentence of 240 months in prison. The court entered its judgment order on October 8, 2010, and Rivera-Santana has timely appealed. We possess jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

II.

We review for reasonableness a sentence imposed by a district court. *See Gall v. United States*, 552 U.S. 38, 46 (2007). In undertaking such a review, "we must first ensure that the district court committed no significant procedural error," such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range." *United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011) (internal quotation marks omitted). Absent a significant procedural error, our next step is to assess the substantive reasonableness of the sentence imposed. *See id.* In either event, a "deferential abuse-of-discretion standard" applies to "any sentence, whether inside, just outside, or significantly outside the Guidelines range." *See United States v. Savillon-Matute*, 636

F.3d 119, 122 (4th Cir. 2011) (internal quotation marks omitted).

III.

Rivera-Santana maintains on appeal that his sentence is both procedurally and substantively unreasonable. His procedural challenges arise from three separate decisions made by the sentencing court: (1) the upward departure under Guidelines section 4A1.3(a), departing from the PSR-recommended Guidelines range of 57 to 71 months to an advisory Guidelines range of 77 to 96 months (the "criminal history category departure"); (2) the upward departure under Guidelines section 4A1.3(a)(4)(B), further departing to an advisory Guidelines range of 120 to 150 months (the "offense level departure"); and (3) the upward variance, pursuant to 18 U.S.C. § 3553(a), resulting in the statutory maximum of 240 months. Rivera-Santana identifies four instances of procedural error attributable to the two departures and the variance. First, he suggests that the district court gave too much weight to the illegal reentry guideline, Guidelines section 2L1.2, as a foundation for its departures and variance. Second, Rivera-Santana asserts that the court erred in making its upward departures by relying on improper factors and in calculating his offense level and criminal history points. Third, he posits that, in departing, the sentencing court failed to apply an incremental approach. And, fourth, he claims that the court erred in basing its 90-month variance on the § 3553(a) factors, without considering the relevant mitigating factors and the need to avoid unwarranted sentencing disparities. Separately, Rivera-Santana contends that his sentence is substantively unreasonable because it is greater than necessary to achieve the aims of sentencing and is essentially a life sentence, given his age (55 years) and his health. We assess each of these contentions in turn.

### A.

### 1.

Rivera-Santana first contends that his sentence is procedurally unreasonable because the sixteen-level enhancement authorized by the illegal reentry guideline, section 2L1.2, is an "arbitrary" one. *See* Br. of Appellant 19. He argues that the Sentencing Commission improperly adopted that specific guideline, having failed to conduct adequate "empirical studies or examination of past sentencing practices." *Id.* Additionally, Rivera-Santana asserts that the illegal reentry guideline's sixteen-level enhancement constitutes a "weak base on which to layer both a departure and a variance." *Id.* at 20.

Although a sentencing court may be entitled to consider policy decisions underlying the Guidelines, including the presence or absence of empirical data, *see Kimbrough v. United States*, 552 U.S. 85, 107-10 (2007), it is under no obligation to do so, *see United States v. Mondragon-Santiago*, 564 F.3d 357, 365–67 (5th Cir. 2009); *accord United States v. Lopez*, 650 F.3d 952, 967 (3d Cir. 2011); *see also United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011) (concluding that illegal reentry guideline was properly adopted by Commission). Moreover, Rivera-Santana's procedural challenge to the illegal reentry guideline rests on a faulty premise — that any application of that guideline is "flawed" because it impermissibly double counts a defendant's prior criminal record — first, in determining the offense level, and again in calculating the criminal history score. *See* Br. of Appellant 19-20.

Recognizing that we have previously rejected such a double-counting contention, *see United States v. Crawford*, 18 F.3d 1173, 1178-79 (4th Cir. 1994), Rivera-Santana objects instead to what he characterizes as the "triple- or even quadruple-counting" that purportedly occurred in this case when the sentencing court made two upward departures and

an upward variance after the illegal reentry guideline's sixteen-level enhancement had been applied. *See* Reply Br. of Appellant 10-11. This nuanced objection is entitled to no more mileage than its forerunner — the double-counting objection that we rejected in *Crawford*. The sentencing court committed no procedural error because the Guidelines do not expressly prohibit the triple counting of Rivera-Santana's prior record. *See Crawford*, 18 F.3d at 1180-81 (affirming triple counting of different types of criminal history points for same aggravated felony conviction); *see also United States v. Zuniga-Peralta*, 442 F.3d 345, 347-48 (5th Cir. 2006) (affirming upward departure pursuant to Guidelines section 4A1.3 in addition to twelve-level enhancement under illegal reentry guideline). Nor did the court impermissibly count Rivera-Santana's extensive criminal record when it imposed the upward variance justified under the § 3553(a) sentencing factors. *Cf. United States v. Ventura*, 650 F.3d 746, 751 (D.C. Cir. 2011) (affirming upward variance from illegal reentry guideline's sixteen-level enhancement based on assessment of § 3553(a) factors); *United States v. Guevas-Gomez*, 61 F.3d 749, 750 (9th Cir. 1995) (concluding that "[n]othing in section 3553(b) or in the Guidelines suggests that the district court's departure authority does not extend to [the illegal reentry guideline]").

2.

Rivera-Santana next contends that both of the district court's upward departures were procedurally defective because: (1) the court erroneously relied on our decision in *United States v. Rybicki*, 96 F.3d 754, 757-58 (4th Cir. 1996) (establishing five-factor analysis for whether sentencing court may depart), which he maintains is no longer controlling, due to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005); and (2) the court improperly augmented his criminal history points by scoring prior arrests that were dissimilar to the offense of conviction, *see United States v. Dixon*, 318 F.3d 585, 591 n.5 (4th Cir. 2003) (affirming

departure based on defendant's prior arrests involving mis-conduct similar to offense of conviction). Rather than assess the extent to which *Rybicki* may be good law post-*Booker*, and without deciding whether certain of Rivera-Santana's prior arrests (with no dispositions ascertained) could be scored because they were sufficiently similar to the offense of conviction, we are entitled to summarily reject this contention because, even if we "assume that an error occurred[, it] is harmless." *See United States v. Savillon-Matute*, 636 F.3d 119, 123 (4th Cir. 2011).

Although Rivera-Santana objected to the district court mak-ing any upward departure from the PSR-recommended calcu-lations, he nevertheless acknowledged that the court — acting within its discretion — was authorized under the Guidelines to elevate his criminal history category to VI by adding twelve criminal history points for unscored prior offenses. *See* J.A. 142. Rivera-Santana maintained, however, that the court was entitled to make the first departure only, that is, the crimi-nal history category departure that elevated his advisory Guidelines range to 77 to 96 months. Having carefully assessed this point, we discern no abuse of discretion in the sentencing court's decision that the advisory Guidelines range of 77 to 96 months was inadequate. This decision was soundly explained by the court, which identified a host of supporting facts, including the extensive and serious nature of Rivera-Santana's criminal activities, his chronic recidivism, his squandering of opportunities accorded by his lenient pun-ishments, and the consequences of his most recent illegal reentry. Indeed, the court emphasized that Rivera-Santana was "one of the most dangerous people," with "one of the most effectively demonstrated tendencies to recidivate," that the court had ever sentenced. *See* J.A. 155.

In moving beyond the criminal history category departure to the offense level departure, the sentencing court carefully considered Rivera-Santana's position that only twelve — as opposed to seventeen — additional criminal history points

could properly be scored. In fact, the court calculated the offense level departure by allocating one offense level for every three of those twelve points, which yielded an offense level of 25 and an advisory Guidelines range of 110 to 137 months. The court alternatively performed the same calculation utilizing its determination that seventeen additional criminal history points were justified, resulting in an offense level of 26 and a Guidelines range of 120 to 150 months. Ultimately, the court settled on and fixed the Guidelines range for Rivera-Santana at 120 to 150 months.

Nevertheless, having endeavored to fashion an appropriate sentence by way of its two departures, the court concluded that the advisory Guidelines range of 120 to 150 months was yet inadequate, and thus proceeded to implement an upward variance to the 240-month statutory maximum. Hence, notwithstanding the court's consideration of the alternative departure ranges, it is clear that the court would have imposed the same upward variance to the statutory maximum — whether from the Guidelines range of 110 to 137 months, or from the court-ascertained Guidelines range of 120 to 150 months.[7]

---

[7]In justification for its upward variance based on the § 3553(a) factors, the sentencing court specifically found, inter alia, the following:

- Rivera-Santana had "proved for years that he is a danger to society [and] has no respect for the law," in that he had "kill[ed] his wife, pregnant wife, and kill[ed] his own [unborn] child and molest[ed] his granddaughter";

- Rivera-Santana was "a menace" and "a proven danger" to the public and "to the citizenry of the nation that he ha[d] chosen on multiple occasions illegally to invade";

- Rivera-Santana was willing to violate "any kind of law that [stood] in the way of accomplishing what he want[ed] to do," from "gratify[ing] himself" with his eight-year-old granddaughter to "smuggl[ing] illegal aliens";

- Rivera-Santana had previously "been given leniency [and] all kinds of breaks [which he failed to] take advantage of [choosing instead to] thumb[ ] his nose at . . . society."

See J.A. 158-59.

As a result, we are, in any event, entitled to affirm the sentence imposed — assuming its substantive reasonableness — because any procedural error that may have been made in calculating either of the two departures would necessarily be harmless. *See Savillon-Matute*, 636 F.3d at 123-24 (agreeing that "it would make no sense to set aside a reasonable sentence and send the case back to the district court since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm" (internal quotation marks and alteration omitted)).

3.

Rivera-Santana next contends that the district court procedurally erred by failing to employ the incremental approach in its two upward departures. *See United States v. Dalton*, 477 F.3d 195, 199 (4th Cir. 2007) (requiring sentencing court to "depart incrementally" in assessing upward departure from highest criminal history category); *see also United States v. Rushner*, 966 F.2d 868, 884 (4th Cir. 1992) (requiring sentencing court to explain inadequacies of next higher criminal history category before upwardly departing within existing criminal history categories). Although Rivera-Santana recognizes that the court was not required to "move only one level, or to explain its rejection of each and every intervening level," *see Dalton*, 477 F.3d at 199 (internal quotation marks omitted), he maintains that the court made no effort to consider and reject any of the intervening levels between level 21 and criminal history category IV, on the one hand, and level 26 and criminal history category VI, on the other.

As we have explained, a sentencing court is under no obligation to "incant the specific language used in the guidelines, or go through a ritualistic exercise in which it mechanically discusses each criminal history category or offense level it rejects en route to the category or offense level that it selects." *Dalton*, 477 F.3d at 199 (citation, internal quotation marks, and alterations omitted). In this case, however, it is apparent

that the court employed a well-reasoned process — assigning criminal history points for unscored offenses to move horizontally to the highest criminal history category, then allocating one offense level for each group of three unscored criminal history points to move vertically down the sentencing table to successively higher offense levels.[8] Thus, the sentencing court properly extrapolated from the structure and methodology of the Guidelines in calibrating its upward departures. *See United States v. Terry*, 142 F.3d 702, 707 (4th Cir. 1998) (explaining that "sentencing court should first consider the rationale and methodology of the Sentencing Guidelines" in deciding extent of departure). In this case, the court's methodology provided a sufficient explanation for the departures and the fact that the intervening levels were inappropriate.

It bears repeating that, even if the sentencing court had failed to utilize a proper incremental analysis, any procedural error would be harmless because the upward variance based on the § 3553(a) factors justified the sentence imposed. *See United States v. Evans*, 526 F.3d 155, 165 (4th Cir. 2008). The court acknowledged the advisory nature of the Guidelines, and it thoroughly discussed the relevant § 3553(a) factors: the serious nature of Rivera-Santana's prior offenses, particularly the murder of his pregnant wife and the sexual

---

[8]Several of our sister circuits have approved similar methods for calculating an upward departure where the defendant has accumulated criminal history points that exceed the number required to place him in the highest criminal history category. *See, e.g.*, *United States v. Hurlich*, 348 F.3d 1219, 1222-23 (10th Cir. 2003) (affirming eight offense level increase for every three points above category VI); *United States v. Gonzales-Ortega*, 346 F.3d 800, 803 (8th Cir. 2003) (affirming departure of one offense level for every three criminal history points above category VI); *United States v. Ewing*, 129 F.3d 430, 437 (7th Cir. 1997) (same); *see also United States v. Cash*, 983 F.2d 558, 561 n.6 (4th Cir. 1992) (approving departure above category VI by moving vertically to higher offense levels to produce "roughly same 10-15% increase in guideline range" as moving horizontally to higher criminal history category).

assault of his eight-year-old granddaughter; his dogged defiance and lack of respect for the law, having repeatedly reentered the United States illegally after being deported, and then committing further criminal offenses; Rivera-Santana's tendency to recidivate, which the sentencing judge found exceptional in his twenty years of judicial experience; the need for deterrence, given Rivera-Santana's failure to comply with the law despite previous lenient punishments; and the need to protect the public because he had no regard for his victims. *See United States v. Grubbs*, 585 F.3d 793, 804 (4th Cir. 2009) (concluding that variance sentence "is procedurally reasonable [where] the district court adequately explain[s] its sentence on alternative grounds" by reference to § 3553(a) factors).

4.

In the last of his four procedural contentions, Rivera-Santana argues that the district court, in implementing the variance, failed to consider any mitigating factors or the need to avoid unwarranted sentencing disparities in weighing the § 3553(a) factors. As we have recognized, however, a sentencing court need not "explicitly discuss" each factor "on the record" or "robotically tick through § 3553(a)'s every subsection." *See United States v. Johnson*, 445 F.3d 339, 345 (4th Cir. 2006) (internal quotation marks omitted). Although we are obliged to carefully scrutinize a court's reasoning for a sentence outside the advisory Guidelines range, we will credit an articulation as "clear and appropriate," when the reasons "can be matched to a factor appropriate for consideration" and tailored to the defendant's situation. *See United States v. Moulden*, 478 F.3d 652, 658 (4th Cir. 2007). In this situation, it is evident that the court deemed the factors argued in mitigation, such as Rivera-Santana's age and health problems, as entirely insufficient to outweigh the aggravating factors. And it was well within the court's discretion to accord more weight to the host of aggravating factors and decide that the sentence imposed would serve "the § 3553 factors, on a

whole." *See Gall v. United States*, 552 U.S. 38, 51 (2007); *see also United States v. Jeffery*, 631 F.3d 669, 679 (4th Cir. 2011) (observing that "district courts have extremely broad discretion when determining the weight to be given each of the § 3553(a) factors").

Likewise, we are satisfied that the district court, in fashioning its sentence, considered "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a)(6). During the sentencing colloquy, the court repeatedly emphasized that this was an atypical case and that, given Rivera-Santana's criminal history, he constituted an "anathema to society." *See* J.A. 158. As we have previously explained,

> [w]e will not vacate [a] sentence simply because the court did not spell out what the context of its explanation made patently obvious: namely, that a shorter prison term was inappropriate for a defendant who had repeatedly committed a serious offense and who had already proven immune to other means of deterrence.

*United States v. Montes-Pineda*, 445 F.3d 375, 381 (4th Cir. 2006); *see also United States v. Pergola*, 930 F.2d 216, 220 (2d Cir. 1991) ("Implicit in any statement that the maximum is required is the thought that anything less would be insufficient.").

In pursuing this contention, Rivera-Santana relies on various sentencing statistics and authorities that are entirely unconvincing. Courts have repeatedly made clear that comparisons of sentences may be treacherous because each sentencing proceeding is inescapably individualized or because some defendants possess, as here, a demonstrated propensity for criminal activity that is almost unique in its dimensions. *See United States v. Abu Ali*, 528 F.3d 210, 267 (4th Cir.

2008) (comparisons with other defendants' sentences are unavailing if those defendants have dissimilar circumstances and histories); *United States v. Irving*, 554 F.3d 64, 76 (2d Cir. 2009) (observing that "averages of sentences that provide no details . . . are unreliable to determine unwarranted disparity because they do not reflect the enhancements or adjustments for the aggravating or mitigating factors that distinguish individual cases" (quoting *United States v. Willingham*, 497 F.3d 541, 544 (5th Cir. 2007))). Even if Rivera-Santana's sentence is more severe than average, that fact does not mean that it was unwarranted. Put succinctly, we are unwilling to isolate a possible "sentencing disparity to the exclusion of all the other § 3553(a) factors." *See United States v. Winters*, 416 F.3d 856, 861 (8th Cir. 2005) (affirming statutory maximum notwithstanding defendant's contention that it created sentencing disparity); *see also United States v. Richart*, 662 F.3d 1037, 1049-50 (8th Cir. 2011) (same).

## B.

Finally, Rivera-Santana contends that his 240-month sentence is substantively unreasonable, arguing that it is greater than necessary to achieve the aims of § 3553(a). In pursuing this contention, he emphasizes the degree of the variance (90 months above the advisory Guidelines range), and maintains that it actually amounts to a life sentence, given his age and poor health. That a variance sentence deviates significantly from the advisory Guidelines range, however, does not alone render it presumptively unreasonable. *See Abu Ali*, 528 F.3d at 261. Indeed, "a sentence that deviates from the Guidelines is reviewed under the same deferential abuse-of-discretion standard as a sentence imposed within the applicable guidelines range." *Id.* Put simply, the sentencing court's decision to vary upward to the statutory maximum reflects a thorough, individualized assessment of Rivera-Santana's situation, in light of the § 3553(a) factors. Because the court did not abuse its discretion, we are obliged to accord deference to its sentencing decisions. *See United States v. Diosdado-Star*, 630

F.3d 359, 367 (4th Cir. 2011) (affirming sentence six years above advisory Guidelines range where court properly explained its decision pursuant to § 3553(a) factors); *Evans*, 526 F.3d at 165-66 (upholding reasonableness of sentence eight years above advisory Guidelines range where court provided ample reasons why § 3553(a) factors, "on the whole, justified the sentence"). In these circumstances, therefore, the 240-month sentence imposed on Rivera-Santana is substantively reasonable and must be affirmed.

## IV.

Pursuant to the foregoing, we reject each of Rivera-Santana's appellate contentions and affirm.

*AFFIRMED*