**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 13-4446**

_____

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

COREY A. MOORE,

        Defendant - Appellant.

_____

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Alexander Williams, Jr., District Judge. (8:10-cr-00648-AW-1)

_____

Argued: September 16, 2014      Decided: October 10, 2014

_____

Before WILKINSON, GREGORY, and KEENAN, Circuit Judges.

_____

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Gregory and Judge Keenan joined.

_____

**ARGUED**: Philip Urofsky, SHEARMAN & STERLING LLP, Washington, D.C., for Appellant. James I. Pearce, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF**: Mark D. Lanpher, Bryan Dayton, SHEARMAN & STERLING LLP, Washington, D.C., for Appellant. Mythili Raman, Acting Assistant Attorney General, Denis J. McInerney, Deputy Assistant Attorney General, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, Sujit Raman, Chief of Appeals, Arun G. Rao, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

WILKINSON, Circuit Judge:

After a five-day bench trial, the district court found defendant Corey Moore guilty of, among other things, violating 18 U.S.C. § 924(c) by possessing a firearm "in furtherance of" a crime of drug trafficking. On appeal, Moore challenges the denial of a motion to suppress evidence and the sufficiency of the evidence on the § 924(c) count. As to the Fourth Amendment claim, the motion to suppress should have been raised prior to trial. It was not so raised, and, as the district court found, it was thereby waived. We also find that there is ample evidence to support finding a nexus between the drug trafficking and the firearms under § 924(c) and therefore affirm the conviction.

I.

When reviewing the facts of this case, we take them in the light most favorable to the government as the prevailing party below. United States v. Black, 707 F.3d 531, 534 (4th Cir. 2013); United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002). Police officer Hubley was driving the streets of Takoma Park, Maryland, on September 25, 2010, when he observed Corey Moore walking down Sherman Avenue carrying a green bottle. Suspicious that the bottle might be "a bottle of Heineken beer or the like," the officer turned around. J.A. 121. He radioed that he was going to conduct a stop and beckoned to Moore. Moore

2

began to approach the police cruiser but turned and fled as the officer stepped out of the vehicle.

Officer Hubley pursued and eventually apprehended Moore. In the course of that pursuit, both the officer and two bystanders saw Moore run behind a dumpster and toss up a package. Though Moore and the officer continued running, that package was later recovered and found to contain a half kilogram of cocaine with a street value of over $10,000.

Two days later, officers responded to an attempted break-in at 118 Sherman Avenue in Takoma Park. Upon investigation, the officers found a broken window in the door to the basement apartment. The landlord informed the officers that the basement apartment was rented to "Corey Moore." Based on the attempted burglary and Moore's arrest two days earlier with a half kilogram of cocaine, the officers obtained a search warrant for the apartment.[1] In the apartment, the officers found 2.8 kilograms of phencyclidine (PCP) under the kitchen sink in a large pickle jar, a digital scale disguised as a CD case that tested positive for cocaine residue, open plastic bags, a bag of bottles of a sort used for drug distribution, approximately $45,000 in cash, and two handguns in the bedroom -- an unloaded

_____

[1] When he was arrested, Moore gave the officers a different address on another street in the Anacostia neighborhood of Washington, D.C.

3

.44 caliber Desert Eagle pistol and a loaded .38 caliber Smith & Wesson revolver.[2]

A federal grand jury indicted Moore on four counts: (1) possession with intent to distribute a substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1); (2) possession with intent to distribute one kilogram or more of PCP in violation of 21 U.S.C. § 841(a)(1); (3) possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); and (4) possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).

The district court held a five-day bench trial, during which it heard from twenty government witnesses and six defense witnesses, including the defendant. Over four days into the trial and upon returning from a recess immediately before closing arguments, the defense moved for suppression of all tangible evidence on the grounds that Officer Hubley did not have reasonable suspicion to stop Moore on the street. Moore claimed that the stop constituted an illegal seizure under the Fourth Amendment that tainted all subsequent evidence. The

---

[2] Defendant previously challenged the validity of the apartment search on the grounds that there was no probable cause to justify the warrant and the warrant was so deficient on its face that no reasonable officer would have thought it constitutionally valid. The district court granted the motion to suppress, but we reversed on the basis of the good faith exception set forth in United States v. Leon, 468 U.S. 897 (1984). See United States v. Moore, 477 F. App'x 102 (2012).

district court denied the motion based on its "recollection of the evidence," without briefing or argument from the government.

The district court summarized the testimony, made credibility findings, and announced the verdict. It repeatedly stated that it did not find the defendant's testimony and evidence to be credible. The court found Moore guilty on all four counts. At the sentencing hearing in May 2013, the court denied the motion for reconsideration of its suppression ruling on the grounds that Moore waived the claim by not raising it before trial as required by the Federal Rules of Criminal Procedure. Moore was sentenced to 271 months' imprisonment followed by five years of supervised release. A timely appeal of the denial of the suppression motion and of the § 924(c) conviction followed.

II.

A.

Moore contends that the district court did not find the motion to suppress evidence waived but rather ruled -- incorrectly, in his view -- on the merits that no Fourth Amendment violation had occurred. He argues that the officer lacked reasonable suspicion to stop him and seeks to suppress all evidence flowing from that initial stop, including items recovered during the search of the apartment -- a search that, in his view, was not sufficiently attenuated from the earlier

5

illegality. See Segura v. United States, 468 U.S. 796, 804 (1984).

The Federal Rules of Criminal Procedure require parties to raise motions to suppress evidence before trial. Fed. R. Crim. P. 12(b)(3)(C). The failure to file a suppression motion by the specified pretrial deadline operates as a waiver unless the court grants relief from the waiver "[f]or good cause." Fed. R. Crim. P. 12(e). See United States v. Chavez, 902 F.2d 259 (4th Cir. 1990).

The rule that motions to suppress are waived unless raised before trial or delayed for good cause is not just some procedural tripwire set to ensnare unwary defendants. Requiring parties to make suppression motions before rather than during or at the end of trial greatly reduces the risk that such motions may catch opposing litigants unprepared. Parties deserve to know at the beginning of trial, to the extent possible, what evidence is to be excluded or included. Often the evidence sought to be suppressed is so probative that if it is excluded, the indictment may be dismissed. By the same token, a defendant who knows what evidence will be admitted is better able to prepare his defense accordingly or, in many cases, to choose to enter a plea instead. Waiting until the end of trial deprives both sides of the opportunity to adequately prepare and make informed decisions about trial strategy based on the admitted evidence.

6

It is not only the litigants who are harmed by tardy suppression motions. Especially where a jury is involved, introducing such motions during trial, not to mention immediately before closing arguments, completely disrupts the rhythm of the proceedings. Trials move typically from presentations to arguments to instructions and deliberations, and suppression motions during this progression can come literally out of the blue. Evidence must be taken, and witnesses may need to be rounded up in order to properly determine whether suppression is required. It puts the fact finder -- jury or judge -- on unwanted hold until the suppression hearing is held.

Furthermore, by the time of closing arguments evidence has been introduced, including quite possibly the evidence the defendant seeks to suppress. If the trial court determines that the evidence should not have been introduced, it must ask the fact finder to "unring the bell" and ignore evidence it has heard that is in all likelihood highly prejudicial to the defendant. And inasmuch as jeopardy has attached, a ruling suppressing the evidence may effectively deprive the government of the right to appeal it. See 18 U.S.C. § 3731 (providing interlocutory appeals of suppression orders where defendant has not been placed in jeopardy). For all of the above reasons, the pretrial filing of suppression motions is greatly to be desired.

7

Moore's attorney waited until immediately before closing arguments to move to suppress the evidence resulting from Moore's initial contact with Officer Hubley. During the sentencing hearing, when addressing the motion for reconsideration of the denial of the suppression motion, the district court repeatedly stated that the issue had been waived. Nevertheless, the defendant suggests that good cause existed because he knew information at the end of trial that he did not know at the beginning. He also argues that the district court implicitly found good cause because it found sufficient information on the record to rule on the suppression motion and then made some comments on the merits. Specifically, the court stated that there was no stop because the defendant fled upon seeing Officer Hubley step out of the car. See California v. Hodari D., 499 U.S. 621 (1991).

While we do not suggest that the district court's assessment of the merits was incorrect -- quite the contrary -- its comments in no way vitiated its waiver finding. The district court stated that the issue was waived, then made some cursory comments on the merits, after which it stated again that it found the issue waived. J.A. 1212-15. At no time during this colloquy did the district court so much as indicate there might be good cause to excuse the waiver. District judges are in

control of their orders and hence of the rationales supporting them. Furthermore, trial courts may -- and often do -- adjust or modify the reasons for their rulings or even provide alternative grounds for a decision with an eye to appellate review. In the event, for example, that an appellate court finds a flaw in a trial court's procedural ruling, it can often review its decision on the merits without having to expend judicial resources on a remand. If the district court in this case simply supplied alternative grounds for its decision, we take no exception to it.

For good reason did the district court not find good cause here: there was none. Learning new information by the end of trial does not alone support a good cause finding for delay. See United States v. Wilson, 115 F.3d 1185, 1190-91 (4th Cir. 1997); United States v. Ricco, 52 F.3d 58, 62 (4th Cir. 1995). For one thing, Moore and his attorney were aware of the alleged stop at the start of trial. In fact, he had previously attempted, unsuccessfully, to suppress evidence from the apartment search on Fourth Amendment grounds. See United States v. Moore, 477 F. App'x 102 (4th Cir. 2012). Moreover, the whole point of a suppression hearing is to develop the evidence surrounding the challenged action, rather than await its possible emergence at trial. Finally, Moore's position would render the pretrial requirement virtually meaningless. Defendants often learn

information during trial that they did not know before. If that is sufficient grounds to set aside Rule 12's pretrial requirement on "good cause," the exception swallows the rule.

Moore asserts that other circuits have gone the other way on this issue. However neither of the cases he cites from the Ninth and Eleventh Circuits involved a district court finding of waiver. See United States v. Vasquez, 858 F.2d 1387, 1388-89 (9th Cir. 1988); United States v. Contreras, 667 F.2d 976, 978 n.2 (11th Cir. 1982). And in Vasquez at least, the district court delved far more deeply at trial into the merits than here, actually listening to oral arguments and entertaining the parties' briefs on the suppression issue. Vasquez, 858 F.2d at 1388-89. The Second Circuit for its part found a waiver where the district court sua sponte considered and addressed a Fourth Amendment issue at trial, because the defendants had failed to make a suppression motion until appeal. United States v. Ulloa, 882 F.2d 41, 43 (2d Cir. 1989). We need not pass on the soundness of these various holdings other than to note that, at best from Moore's point of view, they are inapposite. We thus affirm the district court for the reasons set forth above.

### III.

Moore also contends that there was insufficient evidence to uphold his § 924(c) conviction. Though he does not dispute that the government had sufficient evidence to show possession of

10

narcotics with intent to distribute (a "drug trafficking crime" under § 924(c)) and possession of the firearms, he contends the government failed to prove that the firearms were possessed "in furtherance of" the drug trafficking offense. For a claim of insufficient evidence, "we must sustain the fact finder's verdict if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002) (quoting United States v. Myers, 280 F.3d 407, 415 (4th Cir. 2002)). Whether the requisite nexus between the firearms and the drug trafficking crime existed under § 924(c) "is ultimately a factual question," Lomax, 293 F.3d at 705, subject to the clearly erroneous standard, United States v. McKenzie-Gude, 671 F.3d 452, 463 (4th Cir. 2011). On this point, Moore has failed to meet his burden.

Section 924(c) provides in relevant part:

> [A]ny person who, . . . in furtherance of any such [crime of violence or drug trafficking] crime, possesses a firearm, shall, in addition to the punishment provided for such crime . . . (i) be sentenced to a term of imprisonment of not less than 5 years[.]

18 U.S.C. § 924(c)(1)(A). While this language has been assiduously massaged by appellate courts, the statute is driving at a simple point: whether there exists a sufficiently close nexus between the firearms and the drugs to conclude that

11

possession of the firearms was "in furtherance of" drug trafficking.

In Lomax, we explained that Congress's amendment to § 924(c) in 1998 "broaden[ed] the reach of the statute" in order to more effectively "'combat the dangerous combination of drugs and guns.'" 293 F.3d at 704, 706 (quoting Muscarello v. United States, 524 U.S. 125, 132 (1998)). As such, "the fact finder is free to consider the numerous ways in which a firearm might further or advance drug trafficking." Lomax, 293 F.3d at 705. Some of the ways a firearm might "further[], advance[], or help[] forward a drug trafficking crime" include defending the dealer's drugs, drug profits, or his person. Lomax, 293 F.3d at 705. Firearms may also operate as an enforcement mechanism in a dangerous transactional business or they may serve as a visible deterrent. Id. A number of factors may be considered in making this determination, among them:

> "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found."

Id. (quoting United States v. Ceballos-Torres, 218 F.3d 409, 414-15 (5th Cir. 2000)). The fact finder may consider direct and circumstantial evidence, and a conviction may rest upon the

12

latter. <u>United States v. Bonner</u>, 648 F.3d 209, 213 (4th Cir. 2011).

The district court found that a nexus existed between the firearm possession and drug trafficking and there is substantial evidence to support this finding. Multiple relevant factors were present in this case. Moore was keeping a great deal of cash ($45,057), as well as PCP (2.8 kilograms) in his apartment where the firearms were found. The baggies, bottles, and digital scale with cocaine residue suggest that the cocaine likewise had been distributed from the residence and kept there. The firearms, one of which was loaded, were kept in Moore's bedroom in close proximity to the money, suggesting their purpose was protection. Moreover, it was unlawful for Moore to possess any firearm as a convicted felon. The half kilogram of cocaine and 2.8 kilograms of PCP were much larger amounts than anyone would need for personal use, and indeed Moore does not contest on sufficiency grounds the charge of possession with intent to distribute.

It was perfectly reasonable for the trier of fact to weigh these factors and apply the commonsense notion that here the guns and drugs were anything but unrelated. Taken together, a reasonable fact finder could find beyond a reasonable doubt that the firearms were in the apartment for the purpose of protecting Moore, his drugs, and his drug trafficking profits. In the words

13

of the statute, the firearms here were possessed "in furtherance of" drug trafficking.

## IV.

The judgment is hereby affirmed.

AFFIRMED