**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-4120

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CURTIS WATSON, a/k/a LOW,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  Irene C. Berger, District Judge.  (2:18-cr-00279-1)

Submitted:  October 17, 2022                      Decided:  June 21, 2023

Before HARRIS, RICHARDSON, and RUSHING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:**  L. Thompson Price, TOM PRICE LAW, Charleston, West Virginia; Shawn A. Morgan, STEPTOE & JOHNSON PLLC, Bridgeport, West Virginia, for Appellant. Lisa G. Johnston, Acting United States Attorney, Nowles H. Heinrich, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Curtis Watson of conspiracy to distribute heroin, possession of firearms in furtherance of a drug trafficking crime, and witness tampering.  The district court sentenced Watson to 295 months' imprisonment, consistent with his advisory Sentencing Guidelines range.  On appeal, Watson challenges both his conviction and his sentence.  For the reasons given below, we affirm.

## I.

Curtis Watson, known as "Low," led a large-scale drug trafficking operation in Hernshaw, West Virginia.  Watson provided heroin and prescription pills to multiple associates and then supervised their distribution of the drugs.  During a roughly six-month period in 2017, the trial testimony established, the home of one of Watson's associates became a virtual "fast food restaurant" for drug sales, J.A. 29, with drugs sold for ten to twelve hours a day.  Watson's operation brought in thousands of dollars each day, and at sentencing, Watson was found responsible for 1,650 grams of heroin, 1,000 oxycodone pills, and 14 grams of fentanyl.

The charged conspiracy ended on November 17, 2017, after a man purchased and used drugs at the home in question and soon died from a drug overdose.  Police searched the premises and found baggies of heroin, pills, and fentanyl, along with a loaded 9-millimeter handgun.  Watson was not at the house, but the police arrested two of his associates, who testified that Watson supplied them with the drugs and the gun.

Watson initially was indicted for conspiring to distribute heroin and distributing heroin. But while awaiting trial, Watson confronted and yelled at a potential prosecution witness at the courthouse, placing the witness in fear. A superseding indictment then charged Watson with conspiracy to distribute heroin, *see* 21 U.S.C. § 846; use and carry of a firearm during and in relation to a drug trafficking crime, *see* 18 U.S.C. § 924(c)(1)(A); and tampering with a witness, *see* 18 U.S.C. § 112(b)(1).

At trial, fifteen witnesses testified for the government, including seven who had worked with Watson or purchased drugs from him during the period of the charged conspiracy. The witnesses testified that a man named "Low" ran the drug trafficking operation at the Hernshaw residence, and all identified Watson as "Low." Watson testified on his own behalf, denying that he was "Low" and raising what was in effect a mistaken-identity defense. The jury rejected that defense and convicted Watson on all counts.

At sentencing, the district court adopted an advisory Sentencing Guidelines range of 235 to 293 months' imprisonment on the drug and witness-tampering charges, followed by a mandatory 60-month consecutive sentence for the firearm offense. The court rejected the government's request for an upward departure based on the overdose death on November 17, 2017, finding that the relevant offense level already took into account the risk of injury to others. The court also rejected the defendant's request for a downward variance. Ultimately, the court sentenced Watson to a cumulative sentence of 295 months' imprisonment: a bottom-of-the-Guidelines 235 months for the drug and witness-tampering counts, with a required 60-month consecutive sentence on the firearm offense.

3

## II.

On appeal, Watson challenges his convictions on multiple grounds. Having reviewed the record and finding no reversible error, we affirm Watson's convictions.

### A.

Watson raises four alleged errors and constitutional violations associated with his trial, each of which, he contends, entitles him to a new trial on all counts against him. For the reasons given below, we find no merit to those arguments and no ground for a new trial.

First, Watson raises what appears to be an evidentiary contention, arguing that the government improperly displayed for the jury a three-page exhibit – Exhibit 16D – that transcribed text messages between Watson and an associate and included on one page a reference to an "OD," or overdose. According to Watson, that reference could have unduly prejudiced the jury and influenced its verdict, requiring that we set aside his convictions.

Because Watson did not object to the display of Exhibit 16D or request a limiting instruction, we review his claim for plain error only. *See United States v. Olano*, 507 U.S. 725, 732–34 (1993) (setting out standard for plain-error review). It is not clear there was any error here, plain or otherwise, as the record does not conclusively show that the page of Exhibit 16D containing the "OD" reference actually was displayed at trial. And if it was displayed, it would have been only briefly, as the entire exhibit was "quickly" removed from the screen on which it had appeared. J.A. 131. Under the circumstances, there is no reason to think any hypothetical error could have "affected the outcome" of Watson's trial, as would be required for reversal on plain-error review. *Olano*, 507 U.S. at 734. Given

4

the overwhelming evidence of dangerous drug trafficking in this case, a momentary showing of the term "OD" – without any indication of a fatality – could not have appreciably affected the jury's thinking.

Second, Watson claims that he is entitled to a new trial because the jury was not provided with a special verdict form requiring a finding that his drug charge involved the distribution of 100 grams or more of heroin. That drug quantity, Watson argues, is an element necessary for conviction because it increased the range of statutory penalties to which he was exposed, *see Alleyne v. United States*, 570 U.S. 99, 103 (2013), and so he was entitled to a specific jury finding on the issue.

As Watson concedes, because he did not seek a special verdict form or object to its absence at trial, our review is for plain error only. We find no such error here. In this case – unlike *Alleyne* – the relevant drug weight *was* treated as an element of Watson's drug offense, with the jury instructed that to convict, it would have to find beyond a reasonable doubt that the "object of the conspiracy involved distribution of 100 grams or more of heroin." J.A. 212. The government reiterated the point in its summation, explaining that "one of the elements we have to prove is that there was 100 or more grams of heroin distributed as part of this conspiracy." J.A. 225. And the defendant has cited no authority for the proposition that the verdict of a jury properly instructed on the drug-weight element of a crime is insufficient under *Alleyne* if not accompanied by a special verdict form.

Moreover, Watson cannot establish the prejudice required to set aside a conviction under the plain-error standard of review. Consistent trial testimony in this case described a large-scale drug-distribution operation, with drug quantities far exceeding the 100-gram

benchmark at issue. One witness, for instance, testified that 200 to 250 grams of heroin were sold in November 2017 alone. And Watson never disputed this at trial; as noted above, his defense turned not on the quantity of drugs involved, but on his claim that he had been misidentified as the "Low" who ran the drug trafficking operation. Because any error regarding the 100-gram drug quantity could not have "affected [Watson's] substantial rights," *see Olano*, 507 U.S. at 732–34, he cannot prevail on this claim. *See United States v. Promise*, 255 F.3d 150, 161 (4th Cir. 2001) (declining to correct error on plain-error review because of "overwhelming and essentially uncontroverted evidence" that defendant was a major participant in conspiracy to distribute drugs).

Next, Watson argues that the government's closing argument constituted prosecutorial misconduct that violated his due process rights and requires reversal. Specifically, Watson objects to the government saying, at one point in its closing, that Watson "took advantage of a drug crisis in [West Virginia]" and that his "sole purpose in coming to West Virginia was to develop a drug trafficking network." J.A. 221. Watson argues that by virtue of this language, the government improperly appealed to the jury as a community to "make a general statement" against narcotics crimes. Appellant's Suppl. Opening Br. at 25.

Again, because Watson failed to object to this comment before the district court, our review is for plain error only. In determining whether a defendant's due process rights were violated by a prosecutor's closing argument, we ask whether the proceeding at issue was rendered "fundamentally unfair" by improper argument, considering such factors as "the nature of the comments," whether they were "isolated or repeated," and the "quantum

6

of the evidence before the jury." *Boyd v. French*, 147 F.3d 319, 329 (4th Cir. 1998). The comments here, we note, are unlike those at issue in *United States v. Pupo*, 841 F.2d 1235, 1240 (4th Cir. 1988), on which Watson relies, and in which the prosecutor expressly urged the jury to "make [a] statement" to "address these types of conspiracies that are taking place in [the] community." There is no similar invitation to this jury to make a statement or send a message, and as the government argues, its language could be read as nothing more than a fair comment on the evidence. Moreover, the commentary at issue was isolated, occurring only once in the government's closing, in a case in which the evidence against the defendant was overwhelming. *See Boyd*, 147 F.3d at 329. Under the circumstances, it cannot be said that the government's statement affected Watson's substantial rights by depriving him of a fundamentally fair trial. *See Pupo*, 841 F.2d at 1240 (holding that improper "make a statement" remarks did not rise to level of due process violation because they were isolated and the evidence of guilt, though not overwhelming, was adequate).

Finally, Watson claims that he was provided ineffective assistance of counsel at trial, in violation of his Sixth Amendment rights. *See Strickland v. Washington*, 466 U.S. 668 (1984). We decline to reach that claim. Ineffective assistance claims generally are not addressed on direct appeal, and they may be resolved in that posture only if it "conclusively appears from the record that counsel did not provide effective assistance." *United States v. Galloway*, 749 F.3d 238, 241 (4th Cir. 2014) (alteration omitted); *see United States v Benton*, 523 F.3d 424, 435 (4th Cir. 2008). Watson cannot meet this "demanding"

7

standard. *Galloway*, 749 F.3d at 241. Accordingly, his claims should be raised, if at all, in a motion under 28 U.S.C. § 2255, to permit sufficient development of the record.

## B.

Watson also raises a separate challenge to his conviction on his firearm charge, arguing that the district court improperly denied his motion for a judgment of acquittal on that count. According to Watson, the government presented insufficient evidence to establish he used the gun recovered at his accomplice's home to further or advance his drug trafficking crimes, as required to sustain a conviction under 18 U.S.C. § 924(c)(1)(A). *See United States v. Moore*, 769 F.3d 264, 270 (4th Cir. 2014) (discussing required "nexus between the firearms and the drugs"). We disagree.

While a challenge to the sufficiency of the evidence to support a conviction is reviewed de novo, the defendant bears "a heavy burden." *See United States v. Wolf*, 860 F.3d 175, 194 (4th Cir. 2017). We "construe the evidence in the light most favorable to the government, assuming its credibility, and drawing all favorable inferences from it, and will sustain the jury's verdict if *any* rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Penniegraft*, 641 F.3d 566, 571 (4th Cir. 2011). And as we have noted, "[d]etermining whether an adequate connection has been made between a firearm and an underlying drug offense is a classic jury question." *United States v. Kimberlin*, 18 F.3d 1156, 1158 (4th Cir. 1994).

Here, substantial trial evidence supports the jury's verdict. Watson insists that there is no evidence that the gun was used to further or advance his drug trafficking offenses; at most, he argues, "the firearm and the drugs were possessed simultaneously." Br. of

8

Appellant at 9. But "the fact finder is free to consider the numerous ways in which a firearm might further or advance drug trafficking." *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002). And here, one of Watson's associates testified to just such a use: Watson provided him with the gun, he explained, to protect the drug operation at the Hernshaw residence. *See Moore*, 769 F.3d at 270 (explaining that firearm may further or advance drug trafficking crime by "defending the dealer's drugs" or "drug profits"). Viewed in the light most favorable to the government, the trial evidence is sufficient to support Watson's § 924(c) conviction, and the district court properly denied his motion for a judgment of acquittal on that charge.

## III.

Watson also challenges his sentence, arguing that his 235-month sentence on his drug and witness-tampering charges is substantively unreasonable because it is an "outlier" when compared to nationwide data on sentences for opioid-related crimes. Br. of Appellant at 13. We cannot agree.

This court reviews the substantive reasonableness of a sentence under an abuse-of-discretion standard, "tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). Here, critically, there is no variance: Watson's sentence is within – and at the lowest end – of the advisory Guidelines range. For that reason, it is "presumptively reasonable." *United States v. Louthian*, 756 F.3d 295, 306 (4th Cir. 2014). That presumption can only be rebutted by showing that the sentence is unreasonable when

measured against the 18 U.S.C. § 3553(a) factors. *Id*. And "district courts have extremely broad discretion when determining the weight to be given [to] each of the 18 U.S.C. § 3553(a) factors." *United States v. Jeffery*, 631 F.3d 669, 679 (4th Cir. 2011).

Here, prior to imposing its within-Guidelines sentence, the district court properly calculated the Sentencing Guidelines and considered the § 3553(a) factors as well as the arguments of the government and the defendant.[*] When analyzing the § 3553(a) factors, the court noted the substantial quantity of drugs involved; Watson's exploitation of the drug addiction of one of his associates; Watson's various obstructive acts, including threatening a witness and committing perjury at trial; his supervisory role in the trafficking operation; his possession of firearms; his criminal record and particular risk of recidivism; and other relevant facts. Nothing about the district court's consideration of these factors leads us to believe that its within-Guidelines sentence was an abuse of discretion and substantively unreasonable.

Indeed, Watson's argument focuses not on his individual offenses, characteristics, and circumstances, but on nationwide sentencing data that purportedly shows a disparity between his 235-month sentence and the "median" sentences imposed for allegedly similar drug trafficking crimes. Watson describes this data at a high enough level of generality that it is impossible to tell whether it controls for defendants with similar criminal histories

---

[*] Whenever we review a sentence, "we must first ensure that the district court committed no significant procedural error[.]" *See United States v. Rivera-Santana*, 668 F.3d 95, 100 (4th Cir. 2012). The defendant does not in any way dispute the procedural reasonableness of his sentence, and we agree that there is no procedural error here.

or equivalent aggravating factors.  But in any event, as we have cautioned, "comparisons of sentences may be treacherous because each sentencing proceeding is inescapably individualized." *United States v. Rivera-Santana*, 668 F.3d 95, 105 (4th Cir. 2012).  Even if it could be shown that Watson's sentence is "more severe than average," in other words, that would "not mean that it was unwarranted."  *Id.* at 106.  Given the constellation of individualized factors appropriately considered by the district court, we find no abuse of discretion in its imposition of a 235-month within-Guidelines sentence.

## IV.

For the reasons given above, we affirm Watson's convictions and sentence.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and would not aid the decisional process.

*AFFIRMED*